Otto DORRIS, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Respondent.

No. 85–7642.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 5, 1986.

Decided Jan. 27, 1987.

Steven Roseman, Long Beach, Cal., for petitioner.

Ray Bennett, Marianne Demetral Smith, and Dan Valenzuela, Washington, D.C., for respondent.

Before WALLACE, BOOCHEVER and KOZINSKI, Circuit Judges.

BOOCHEVER, Circuit Judge:

Otto Dorris appeals the decision of the Benefits Review Board (Board) that affirmed the order of the Administrative Law Judge (ALJ) denying his claim for workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1982).[1] At issue is the delineation between non-maritime trucking and maritime longshoring employment for the purpose of coverage under the LHWCA.

## I.

## FACTUAL BACKGROUND

On October 21, 1980, the claimant, Otto Dorris, was injured when he slipped and fell while stepping down from the cab of his truck to the dock at Long Beach, California. Dorris was employed by California Cartage Co. (Cartage Co.) as a truck driver. Cartage Co. is a trucking company and a large portion of its business consists of transporting cargo in and out of the Los Angeles and Long Beach harbors. Dorris spent approximately 75 percent of his working time trucking to and from the harbor area. In addition to driving his truck to and from the harbor, Dorris testified that he stuffed (loaded) and stripped (unloaded) containers, guided the crane operator in placing containers on the truck, and placed dunnage to stabilize the containers on his trailer. On occasion, he transported cargo from a berth in one city to a berth in another city. The president of Cartage Co. stated that the company's truck drivers never stuffed or stripped containers at the harbor and, had they attempted to do so, the longshoremen would have closed the docks. He also stated that drivers did not place dunnage on the chassis of trailers. The ALJ credited his testimony concerning the loading and unloading of containers. In a rare instance, cargo might be unloaded directly from the ship onto the truck. Occasionally, the truck driver might use a forklift to load cargo, which longshoremen had placed in the dock warehouse, onto his truck. Dorris indicated that he had not done that type of work for the past seven months to a year.

Dorris filed a claim for workers' compensation under the LHWCA. The ALJ denied his claim for compensation. The Board affirmed, holding that Dorris failed the

1. The LHWCA was amended on September 28, 1984. *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, 98 Stat. 1639. The 1984 Amendments to the Act, which exclude individuals employed by certain "transporters," Pub.L. No. 98–426, § 2(a), 98 Stat. at 1639, do not apply to this case because the injury occurred prior to the effective date of the amendments, Pub.L. No. 98–426, § 28(c), 98 Stat. at 1655.

"status" test of section 902(3) because he was involved in overland transportation and was not engaged in activities integral to longshoring.

## II.

## STANDARD OF REVIEW

The Board must accept the ALJ's factual findings if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3). This court reviews the Board's decisions for adherence to the statutory standard governing the Board's review of the ALJ's factual determinations and for errors of law. *Long v. Director, Office of Workers' Compensation Programs*, 767 F.2d 1578, 1580 (9th Cir.1985).

## III.

## DISCUSSION

The LHWCA provides that a claimant will be covered under the Act when he sustains an injury within the situs as defined by section 903(a) and has the status of an employee under section 902(3). The situs requirement is not an issue in this case. To be within the Act's status provision, an employee must be one "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations." 33 U.S.C. § 902(3).

The status requirement is satisfied where a person spends "at least some of [his] time in indisputably longshoring operations." *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 273, 97 S.Ct. 2348, 2362, 53 L.Ed.2d 320 (1977). Caputo was employed in loading and unloading containers, barges, and trucks at a pier. He was injured while rolling a dolly loaded with ship's cargo into a consignee's truck. His work thus involved "indisputably longshoring operations."

"A worker responsible for some portion of that activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process." *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 82–83, 100 S.Ct. 328, 337–338,

62 L.Ed.2d 225 (1979). Ford was injured while fastening military vehicles onto railroad flatcars. The vehicles had been delivered to the port by ship, stored, and already loaded onto the flatcars. *Id.* at 71, 100 S.Ct. at 331. Another respondent, Bryant, was injured while unloading a bale of cotton from a dray wagon into a pier warehouse. Cotton was delivered to the port by inland shippers and stored in cotton compress warehouses. The cotton was then moved by dray wagons to pier warehouses where it was unloaded and stored. Later, longshoremen moved it from the pier warehouses onto ships. *Id.* at 71–72, 100 S.Ct. at 331–332. Both Ford and Bryant were held to be "in maritime employment because they were engaged in intermediate steps of moving cargo between ship and land transportation." *Id.* at 83, 100 S.Ct. at 337 (footnote omitted). However, "neither the driver of the truck carrying cotton ... nor the locomotive engineer transporting military vehicles ... was engaged in maritime employment." *Id.*

■ Stuffing and stripping containers at dockside, loading and unloading containers onto and from the ship, and directing crane operators in off-loading the ship are longshoring work. The ALJ found the employer's testimony persuasive to the effect that Dorris did not stuff and strip containers while dockside. He found that if Dorris engaged in any longshoring type of work it was only on an episodic basis. When substantial evidence supports such a finding of fact and especially when the credibility of witnesses is involved, we will not disturb that finding on review. *See NLRB v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir.1977).

The claimant's regular duties consisted of driving his truck onto the dock, where containers were placed on the vehicle's chassis, and driving to the consignee's delivery place. He also delivered containers from the consignee's delivery place to the harbor. On occasion, Dorris transported containers between steamship lines located in different harbors. The Board conceded that moving cargo from berth to berth was

longshore work; the employer did not. Here, however, the evidence did not indicate mere moving of cargo from berth to berth at the same dock. We hold that truck drivers transporting cargo from a berth at a dock to a berth in a different harbor are not engaged in longshore work when the goods are unloaded from a ship and loaded aboard another by other workers.

This case is distinguished from *Boudloche v. Howard Trucking Co.*, 632 F.2d 1346 (5th Cir.1980), *cert. denied*, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). Boudloche was found to be covered under the LHWCA. He spent 2½ to 5 percent of his work time loading or unloading cargo at unequipped docks where he had to board vessels. He was also expected to assist in the loading and unloading process at fully equipped docks to develop good will for his employer. Dorris was neither expected to nor assigned to perform longshoring work. This is a case where, in the language of the Fifth Circuit, the "worker's employment in maritime activity [is] so momentary or episodic it will not suffice to confer status." *Id.* at 1348.

Our decision is further compelled by the need to "eliminate the gray areas of jurisdiction under the ... statute and place a clear line of demarcation between those employees entitled to the benefits of federal compensation and those entitled to recover under state law." *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957, 960 (9th Cir.1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976). We recognize that the Supreme Court has directed us to take an expansive view of coverage to give effect to the remedial purpose of the Act, and that doubtful cases should be resolved in favor of the claimant seeking coverage. *See Northeast Marine Terminal Co. v. Caputo*, 432 U.S. at 268, 97 S.Ct. at 2359. Nonetheless, a truck driver, "whose responsibility on the waterfront is essentially to pick up or deliver cargo unloaded from or destined for maritime transportation [is] not covered." *Id.* at 267, 97 S.Ct. at 2359. We hold that a truck driver whose work involves driving a truck to the dock for receiving or removing containers, fastening the containers on the truck or chassis, and the trucking of containers between berths located in different harbors is not engaged in longshore work for the purpose of conferring jurisdiction under the LHWCA. We need not decide whether moving cargo from berth to berth in the same harbor would be longshore work.

We agree with the Board that Dorris was involved in transporting cargo to the dock and, after cargo was unloaded, in its "further trans-shipment." *See Caputo*, 432 U.S. at 266 n. 27, 97 S.Ct. at 2358 n. 27. We conclude that Dorris performed trucking and not maritime activity.

For the foregoing reasons, the order of the Benefits Review Board is

AFFIRMED.