SIERRA CLUB, Petitioner,

v.

UNITED STATES NUCLEAR REGULA-
TORY COMMISSION and the United
States of America, Respondents,

and

Pacific Gas and Electric Company,
Respondent–Intervenors.

No. 87–7481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 1988.

Decided Nov. 30, 1988.

As Amended on Denial of Rehearing
Feb. 2, 1989.

Dian M. Grueneich and Marcia Preston, San Francisco, Cal., for petitioner.

William H. Briggs, Jr., Sol., William C. Parler, Gen. Counsel, E. Leon Slaggie, Deputy Sol., C. Sebastian Aloot and Geraldine Fehst, U.S. Nuclear Regulatory Com'n, Washington, D.C., for respondents.

Bruce Norton and Richard F. Locke, San Francisco, Cal., for respondent-intervenors.

Before SCHROEDER and WIGGINS, Circuit Judges, and DIMMICK,* District Judge.

---

\* Honorable Carolyn R. Dimmick, United States District Judge for the District of Western Washington, sitting by designation.

1. Under the agency's rules of procedure, a person petitioning for intervention into licensing

SCHROEDER, Circuit Judge:

The Sierra Club petitions for review of an order of the Nuclear Regulatory Commission's Atomic Safety and Licensing Appeal Board ("Appeal Board") involving the Diablo Canyon nuclear power station. The Sierra Club intervened in proceedings initiated by Pacific Gas and Electric (PG & E) to amend PG & E's operating licenses to allow expansion of its on-site fuel storage capacity at the facility. During the administrative proceedings, the Sierra Club raised a "contention"[1] regarding the risk of a loss-of-coolant accident. The Sierra Club based its contention on a recent study prepared for the Nuclear Regulatory Commission (NRC) that described the risks and consequences of such accidents. The report contained recommendations adverse to the type of fuel storage contemplated in the proposed Diablo Canyon license amendments. The Atomic Safety and Licensing Board ("Licensing Board"), however, rejected the Sierra Club's contention as inadmissible, *In re Pacific Gas and Elec. Co. (Diablo Canyon Nuclear Power Plant, Units 1 and 2),* 26 NRC 159, 167 (Lic.Bd. 1987), and the Appeal Board upheld the Licensing Board's disposition, *In re Pacific Gas and Elec. Co. (Diablo Canyon Nuclear Power Plant, Units 1 and 2),* 26 NRC 449, 456 (App.Bd.1987).

The full Commission did not choose to review the Appeal Board's order. *See* 10 C.F.R. § 2.786(a) (1988). Accordingly, that order is the final agency decision. The principal issue before us is whether the Licensing Board should have admitted the Sierra Club's contention. We answer in the affirmative because we conclude that the agency acted arbitrarily. We remand for further hearings. *See* 5 U.S.C. § 706(2)(A) (1982).

## BACKGROUND

On May 21, 1986, the NRC issued an environmental assessment (EA) and a find-

proceedings is required to submit to the presiding officer "a list of the contentions which petitioner seeks to have litigated in the matter." 10 C.F.R. § 2.714(b) (1988).

ing of no significant impact for the Diablo Canyon license amendments. *See* 10 C.F.R. § 51.14(a) (1988).[2] The proposed amendments were to permit PG & E to expand the spent fuel storage capacity at Diablo Canyon five fold, from 270 to 1324 fuel assemblies per reactor. This expansion would be achieved by a method known as "reracking": replacing existing storage racks with high density racks. The spent fuel racks are stored in a pool of coolant at each reactor site.[3]

On May 30, 1986, without having held any hearings on the license amendments, the NRC approved the amendments and made them immediately effective. On September 11, however, this court reversed the NRC decision and remanded the case to the Licensing Board for hearings. *See San Luis Obispo Mothers for Peace v. NRC,* 799 F.2d 1268, *dissent,* 804 F.2d 523 (9th Cir.1986). The proceedings we review in this petition thus flow from that decision.

Hearings were held in June 1987. At the beginning of those hearings, the Sierra Club orally requested the admission of an additional contention concerning the possible consequences of an accident in which there is a loss of the spent fuel coolant. Such an accident could result in a spontaneous burning of the zirconium alloy ("zircaloy") cladding that surrounds the spent fuel elements, causing a significant release of radiation. The Sierra Club based this contention on a January 1987 draft report commissioned by the NRC and authored by the Brookhaven National Laboratory (BNL). The report was entitled "Severe Accidents in Spent Fuel Pools in Support of Generic Safety Issue 82."[4] In light of the BNL report, the Sierra Club requested the

Licensing Board to order the NRC staff to prepare an environmental impact statement (EIS) on the reracking license amendments.

On September 2, 1987, the Licensing Board rejected the Sierra Club's zircaloy-fire contention because the Board said it did not meet the NRC's standards for admission. *See In re Pacific Gas and Elec. Co.,* 26 NRC at 164, 167. The Board also ruled that an EIS was not required. *Id.* On September 11, the Licensing Board issued a decision resolving other, unrelated contentions in PG & E's favor and authorizing the issuance of the license amendments. *See In re Pacific Gas and Elec. Co. (Diablo Canyon Nuclear Power Plant, Units 1 and 2),* 26 NRC 168, 198–99 (Lic.Bd.1987). The Sierra Club appealed the Licensing Board's refusal to admit the zircaloy-fire contention, and its disposition of another contention, designated "Contention I(B)(7)," to the Appeal Board.

On December 21, 1987, the Appeal Board issued its decision, affirming the Licensing Board's orders. *See In re Pacific Gas and Elec. Co.,* 26 NRC at 454. The Sierra Club filed a petition for review with this court on January 7, 1988.

## JURISDICTION

The NRC contends this court lacks subject matter jurisdiction over this petition because the Sierra Club prematurely filed its petition for review. This court's jurisdiction over this case is based on section 189(b) of the Atomic Energy Act, 42 U.S.C. § 2239(b) (1982), and the Hobbs Act, 28 U.S.C. § 2342(4) (1982). *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 733, 105 S.Ct. 1598, 1601, 84 L.Ed.2d 643

---

**2.** Except under limited circumstances, the NRC must issue an environmental assessment for each action taken by the NRC to determine whether the agency must also prepare an environmental impact statement (EIS) for the action, as required by the National Environmental Policy Act of 1969 (NEPA). *See* 10 C.F.R. §§ 51.14(a), 51.30 (1988). If the agency determines that an EIS is not necessary, it must then issue a finding of no significant impact. *See id.*

**3.** For more information on reracking, see *San Luis Obispo Mothers for Peace v. NRC,* 799 F.2d 1268, 1269, *dissent,* 804 F.2d 523 (9th Cir.1986).

**4.** The NRC regulations charge the Office of Nuclear Regulatory Research with the responsibility of identifying and resolving "generic safety issues for nuclear power plants and other facilities regulated by the NRC." 10 C.F.R. § 1.45(a) (1988). Generic safety issue 82 concerns "the radiological risks posed by storage of spent reactor fuel at commercial reactor sites in the United States." BNL report at xiii. The NRC's Division of Safety Technology assigned the issue a "medium" priority in its prioritization of generic safety issues. *Id.* at xvii.

(1985). The Hobbs Act gives the courts of appeals exclusive jurisdiction over petitions seeking review of all final orders of the NRC. *See* 28 U.S.C. § 2344 (1982). The Act requires a party seeking judicial review of an NRC order to file a petition for review within 60 days of the entry of the agency's final order. *Id.; see California Ass'n of the Physically Handicapped, Inc. v. Federal Communications Comm'n*, 833 F.2d 1333, 1334 (9th Cir.1987) (60–day time limit is jurisdictional). The issue is whether the Sierra Club filed a petition within 60 days of a "final" order.

On December 21, 1987, the Appeal Board issued its decision upholding the Licensing Board's rulings. The Sierra Club filed a petition for review, within 60 days, on January 7, 1988. Under the NRC's rules, however, the Appeal Board decision was subject to sua sponte review by the full Commission for a period of at least forty days (i.e., until February 1, 1988). *See* 10 C.F.R. § 2.786(a) (1988). On January 27, 1988, the NRC extended the sua sponte review period until February 24, 1988, and then again extended the period until March 11, 1988. Under the NRC regulations, the agency could have extended the review period indefinitely, *see* 10 C.F.R. § 2.772(f) (1988), but did not extend it in this case past March 11. The NRC maintains that the Appeal Board decision did not become "final" for review purposes until that date.

■ The Hobbs Act does not define "final order," and this court's interpretation of the statute has not clarified the term's meaning in this context. In cases discussing the appealability of administrative decisions under other laws, however, this court has adopted a flexible and pragmatic approach to finality. *See Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Board of Oil and Gas Conservation*, 792 F.2d 782, 789 (9th Cir.1986). Generally, administrative orders are final and appealable if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process. *See, e.g., Air California v. United States Dept. of Transp.*, 654 F.2d 616, 621 (9th Cir.1981).

■ The Appeal Board's December 21, 1987 order established the parties' rights and was immediately enforceable. *See* 10 C.F.R. § 2.786(b)(8) (1988) ("Neither the filing nor the granting of a petition for review [by the full Commission] will stay the effect of the decision or action of the Atomic Safety and Licensing Appeal Board, unless otherwise ordered by the Commission."). Hence, the Appeal Board order was final for purposes of judicial review. The fact that the NRC maintained sua sponte review power after the Appeal Board's decision did not destroy that finality. *Cf. Abramowitz v. United States Envtl. Protection Agency*, 832 F.2d 1071, 1075 (9th Cir.1987) (EPA notice stating that it was "holding open" and "was not taking final action" on a ruling did not destroy finality); *County of Rockland v. NRC*, 709 F.2d 766, 775 (2d Cir.) (language in the Commission's order that left open the possibility that the Commission might reconsider its decision in the future did not destroy the finality of the decision), *cert. denied*, 464 U.S. 993, 104 S.Ct. 485, 78 L.Ed. 2d 681 (1983). Our conclusion serves the interest of insuring prompt review by deterring lengthy and indefinite extensions of the NRC sua sponte review period. This court has jurisdiction to hear this petition for review.

### ADMISSIBILITY OF THE ZIRCALOY–FIRE CONTENTION

■ The Sierra Club submitted its zircaloy-fire contention at the opening of the Licensing Board hearings on June 16, 1987. The contention, entitled "Motion to Include Issues Raised in Generic Issue 82 as Contentions in This Proceeding and to Direct Preparation of an Environmental Impact Statement," stated: "The proposed action significantly increases the consequences of loss of cooling accidents in that a loss of water in the spent fuel pools could lead to spontaneous ignition of zircaloy cladding of the fuel elements in the high density configuration with significant releases of radiation." *In re Pacific Gas and Elec. Co.*, 26 NRC at 160. The contention was accom-

panied by, and based upon, the BNL report. The report was then in draft form and had apparently only recently come to the attention of the Sierra Club.

The Brookhaven National Laboratory is one of the national laboratories operated by the federal Department of Energy. The NRC commissioned the Brookhaven laboratory to prepare the report at issue in this case. The report presents the results of an extensive study of the risks posed by severe loss-of-coolant accidents at the spent fuel pools of two facilities that utilize high density storage racks. Using a risk analysis model known as probabilistic risk assessment, the authors analyzed the probability of occurrence for several different accident scenarios that might cause a loss of coolant. Those scenarios included: (1) a loss of cooling capacity; (2) an earthquake; (3) the intrusion of various objects from plane crashes, storms, and mechanical failures; (4) the failure of pool seals; and (5) the dropping of fuel casks during fuel loading. The authors concluded that the probability of such an accident occurring at one of the study plants was equal to or less than 2.6 out of 10,000 per reactor year.

Should such an event occur, however, the authors estimated that the likelihood of a zircaloy fire, and a subsequent release of radiation, was as high as 100%. The authors noted that the old-style low density racks have an adequate ventilation space between fuel assemblies to prevent a zircaloy fire in the event of a loss-of-coolant accident, as long as the fuel stored in the racks has been out of the reactor core for at least 50 days. However, because the high density racks used at the study reactors severely restrict ventilation, the authors stated that a loss-of-coolant at those plants could cause a zircaloy fire among fuel assemblies that have been stored in those racks for well over a year. The authors concluded "that the risk estimates are quite uncertain and could potentially (under worst case assumptions) be significant." Accordingly, the authors recommended, inter alia, placing freshly discharged fuel in low density racks as a means to lower the risk.

The NRC regulations governing intervention into license amendment proceedings provide that intervenors should submit their contentions to the Licensing Board no later than fifteen days before the prehearing conference. 10 C.F.R. § 2.714(b) (1988). The Board will consider late-filed contentions only if the balancing of certain factors indicates that it should do so. *Id.* § 2.714(a)(1), (b).[5] All contentions, timely or otherwise, must be set forth with "reasonable specificity." *Id.* § 2.714(b). In passing on the admissibility of a contention, however, "it is not the function of a licensing board to reach the merits of [the] contention." *In re Carolina Power and Light Co. (Shearon Harris Nuclear Power Plant),* 23 NRC 525, 541 (App.Bd.1986).

In declaring the zircaloy-fire contention inadmissible, the Licensing Board did not address the factors for late-filed contentions under 10 C.F.R. § 2.714(a)(1);[6] rather, it held that the Sierra Club had not shown a sufficient "nexus" between the BNL report and the Diablo Canyon facility. *See In re Pacific Gas and Elec. Co.,* 26 NRC at 164, 167. In affirming the Licensing

---

5. The relevant factors include:

  (i) Good cause, if any, for failure to file on time.

  (ii) The availability of other means whereby the petitioner's interest will be protected.

  (iii) The extent to which the petitioner's participation may reasonably be expected to assist in developing a sound record.

  (iv) The extent to which the petitioner's interest will be represented by existing parties.

  (v) The extent to which the petitioner's participation will broaden the issues or delay the proceeding.

10 C.F.R. § 2.714(a)(1) (1988).

6. This is understandable because it appears that the Sierra Club's late submission satisfied all the relevant factors. Because the BNL issued its draft report after the prehearing conference, the Sierra Club had good cause for filing its contention late. It does not appear that there are means other than the present proceedings through which the Sierra Club can protect its interests.

Board's decision, the Appeal Board rejected the lower board's "nexus" approach, and held instead that the Sierra Club's contention did not meet the "reasonable specificity" standard of 10 C.F.R. § 2.714(b) because (1) it failed to allege a lack of compliance with any existing safety standard, and (2) it failed to mention a particular mechanism or scenario that might cause the hypothesized accident. *See In re Pacific Gas and Elec. Co.,* 26 NRC at 456.

We deal first with whether the contention failed adequately to allege a lack of compliance with NRC safety standards. In determining whether to issue an amended license, the NRC must consider whether "[t]he processes to be performed, the operating procedures, the facility and equipment, the use of the facility, and other technical specifications ... provide reasonable assurance that the applicant will comply with the regulations in this chapter, including the regulations in Part 20, and that the health and safety of the public will not be endangered." 10 C.F.R. §§ 50.40, 50.92 (1988). Part 20, in turn, articulates specific standards for protection against radiation exposure. *See id.* §§ 20.105–.106.

The Sierra Club's zircaloy-fire contention states that PG & E's reracking proposal could lead to "significant releases of radiation." *See In re Pacific Gas and Elec. Co.,* 26 NRC at 160. The contention, if true, would violate the above provisions of the NRC regulations.

Furthermore, the zircaloy-fire contention differs little from the form of other contentions the Licensing Board decided to admit. For example, Contention I(B)(2) states:

It is the contention of the Sierra Club that the [PG & E] Reports fail to include consideration of certain relevant conditions, phenomena and alternatives necessary to independent verification of claims made in the Reports regarding consistency of the proposed reracking with public health and safety, and the environment, and with federal law.

In particular, the Reports fail to consider:

2) The resonant behavior of the spent fuel assemblies in the racks in re-

sponse to the [postulated Hosgri earthquake] and the consequences of such behavior....

*In re Pacific Gas and Elec. Co.,* 26 NRC at 173. The only real difference in form between this contention and the zircaloy-fire contention is the inclusion of the phrase "regarding consistency of the proposed reracking with public health and safety, and the environment, and with federal law." The Sierra Club included this phrase in various forms in all of the other admitted contentions. It is unlikely that the inclusion of such a boilerplate phrase in the zircaloy-fire contention would have made a significant difference in PG & E's understanding of the contention or its ability to oppose it. The safety allegations were adequate.

We next turn to the Appeal Board's position that the contention lacked a causal scenario. While the contention itself did not contain any specific accident scenario, the BNL report, which was attached to the Sierra Club's contention, more than adequately identified such scenarios. The Appeal Board has repeatedly recognized that contentions identifying and referring to particular documents or studies are sufficiently specific for the purposes of admission. *See, e.g., In re Texas Utilities Elec. Co. (Comanche Peak Steam Elec. Station, Unit 1),* 25 NRC 912, 930 (App.Bd.1987); *In re Philadelphia Elec. Co. (Limerick Generating Station, Units 1 and 2),* 22 NRC 681, 693–94 (App.Bd.1985); *In re Houston Lighting and Power Co. (Allens Creek Nuclear Generating Station, Unit 1),* 11 NRC 542, 548–49 (App.Bd.1980). The Sierra Club submitted with its contention a copy of the BNL report and made clear in the title and text of its contention that it wished to litigate issues contained in that report. *See In re Pacific Gas and Elec. Co.,* 26 NRC at 160–61. The BNL report identifies and evaluates five "accident initiating events" or causal scenarios. PG & E would have reasonably assumed that the Sierra Club intended to litigate arguments based on those scenarios.

The Appeal Board has explicitly defined the standards to be used by both itself and

the Licensing Board in determining the admissibility of a contention. The relevant inquiry is whether the contention adequately notifies the other parties of the issues to be litigated; whether it improperly invokes the hearing process by raising non-justiciable issues, such as the propriety of statutory requirements or agency regulations; and whether it raises issues that are appropriate for litigation in the particular proceeding. *See In re Texas Utilities Elec. Co.*, 25 NRC at 930; *In re Philadelphia Elec. Co. (Peach Bottom Atomic Power Station, Units 1 and 2)*, 8 AEC 13, 20–21 (App.Bd.1974). The Sierra Club's zircaloy-fire contention satisfied these requirements. Accordingly, we conclude that the Appeal Board failed to follow its own standards when it rejected the contention as nonspecific. *See In re Philadelphia Elec. Co.*, 8 AEC at 20 ("Section 2.714 should not be read and construed as establishing secretive and complex technicalities....").

### THE MERITS OF THE ZIRCALOY–FIRE CONTENTION

■ After incorrectly holding that the Sierra Club's contention lacked reasonable specificity, the Appeal Board went on to compound its error by purporting to analyze the merits of the contention. It did so on the basis of case law and regulations. No factual analysis was possible because no hearing had been held. This was contrary to the NRC's own announced policy (and one that accords with common sense) that in ruling on the admissibility of a contention, the agency should not rule on the merits:

> [I]n assessing the admissibility of a contention, it is not permissible for a licensing board to reach the merits of the contention. As we have held repeatedly, "[w]hether the contention ultimately can be proven on the merits is 'not the appropriate inquiry at the contention-admission stage.'"

*In re Texas Utilities Elec. Co.*, 25 NRC at 931 (quoting *In re Carolina Power and Light Co.*, 23 NRC at 541 (quoting *In re Philadelphia Elec. Co.*, 22 NRC at 694));

*see also In re Houston Lighting and Power Co.*, 11 NRC at 548–49. A stated rationale behind this limitation is to ensure that parties are not required to prove their contentions before they are admitted in the proceedings. *See In re Houston Lighting and Power Co.*, 11 NRC at 548. The rule also ensures that the boards will not make rulings on the substantive merits of the parties' contentions until the record on those issues is complete. Because the Appeal Board violated that rule, there is no basis for us to hold that the agency decision was correct on the merits. The disputed contention has never been appropriately considered. A hearing is required.

The Sierra Club also asks us to reach the merits of the contention. It asks us to hold not only that its zircaloy-fire contention should have been admitted, but also that the regulations developed by the Council on Environmental Quality (CEQ) to implement NEPA require the NRC to prepare an EIS because the consequences of a zircaloy-fire at Diablo Canyon are significant. We do not agree with the Sierra Club in this regard. Consistent with our holding that the agency improperly reached the merits of the zircaloy issue, we cannot decide the merits in favor of the Sierra Club either. The agency is required to hold a hearing to determine the likelihood and consequences of a zircaloy fire at Diablo Canyon in order to assure compliance with NEPA, as well as with provisions of the Atomic Energy Act, *see* 42 U.S.C. § 2232(a) (1982), and the Nuclear Waste Policy Act, *see* 42 U.S.C. § 10152(1) (1982).

We observe that there is some uncertainty as to whether the CEQ regulations apply to the NRC's decision not to prepare an EIS. The Appeal Board has held that the CEQ regulations are not binding on the NRC because it is an independent regulatory agency. *See In re Pacific Gas and Elec. Co.*, 26 NRC at 461. The Supreme Court has not decided the issue. *See Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 99 n. 12, 103 S.Ct. 2246, 2253 n. 12, 76 L.Ed.2d 437 (1983) ("we do not decide whether [the CEQ regulations] have a binding affect on an independent agency such as the [NRC]").

Section 1500.3 of the current CEQ regulations provides: "Parts 1500 through 1508 of this title provide regulations applicable to and binding on all Federal agencies for implementing the procedural provisions of the National Environmental Policy Act of 1969 ... except where compliance would be inconsistent with other statutory requirements." 40 C.F.R. § 1500.3 (1987). The regulations define "Federal agency" to mean "all agencies of the Federal Government." 40 C.F.R. § 1508.12 (1987). Because the NRC is a federal agency, the CEQ regulations likely apply. *See San Luis Obispo Mothers for Peace v. NRC,* 751 F.2d 1287, 1302 (D.C.Cir.1984) ("Without deciding, we assume that the [CEQ] regulations apply to the Commission"), *reh'g en banc,* 789 F.2d 26 (D.C.Cir.1986), *cert. denied,* 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986); *People Against Nuclear Energy v. NRC,* 678 F.2d 222, 231 (D.C. Cir.1982) ("The CEQ regulations [are] applicable to all federal agencies, including the Commission...."), *reversed on other grounds,* 460 U.S. 766, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983); *cf. The Steamboaters v. FERC,* 759 F.2d 1382, 1393 n. 4 (9th Cir.1985) (court states that the CEQ regulations are "mandatory and binding" on the FERC); *National Tank Truck Carriers, Inc. v. ICC,* 559 F.2d 845, 846–47 (D.C.Cir. 1977) (court assumes that the ICC is a "Federal agency" for purposes of Exec. Order No. 11,514). We need not definitively decide the issue here, however, because the NRC has indicated it will voluntarily apply the CEQ regulation at issue in this case. *See* 49 Fed.Reg. 9352, 9353–54 (1984) ("The Commission intends to follow the standard in 40 C.F.R. § 1502.22(a), though it notes that implementation of section 1502.22(a) may present substantive issues").

## CHALLENGES TO THE ENVIRONMENTAL ASSESSMENTS

The Sierra Club also challenges the sufficiency of two environmental assessments (EAs) prepared by the NRC that concluded that an EIS was not necessary for the Diablo Canyon license amendments. *See*

10 CFR §§ 51.14(a), 51.30 (1988). To the extent that the Sierra Club is still attempting to challenge the original EA, issued in May of 1986, we agree with the NRC that the challenges are not properly before us. That is because the Sierra Club failed to raise any issues concerning the adequacy of the original EA in the Licensing Board hearings. *See Marathon Oil Co. v. United States,* 807 F.2d 759, 767–68 (9th Cir.1986) (court of appeals would not consider issues not timely presented before an administrative proceeding unless the agency lacked jurisdiction to decide the issues or exceptional circumstances warranted such review), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987); *see also Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 553, 98 S.Ct. 1197, 1216, 55 L.Ed.2d 460 (1978); *cf. Oregon Natural Resources Council v. United States Forest Serv.,* 834 F.2d 842, 846–47 (9th Cir.1987) (plaintiffs' failure to follow administrative procedures for contesting an EA precluded them from attacking the EA's adequacy in court); *City and County of San Francisco v. United States,* 615 F.2d 498, 502 (9th Cir.1980) (argument that an EIS must be prepared was raised too late for court to find agency's action unreasonable). The Sierra Club gives no reason for its failure to timely raise these issues and none is apparent in the record.

■ The NRC staff, however, released a second, supplemental EA after the Licensing Board issued its decisions in this case. The Sierra Club challenges this document as well, contending that it is improperly based on stale data that is insufficiently site specific. Their criticisms echo our own from the last time this case was before this court, when we noted:

With respect to petitioners' NEPA claims, however, we note that the site specific environmental assessment was based on a seven year old generic environmental assessment and that no worst case analysis, 40 C.F.R. § 1502.22, appears to have been conducted. We strongly suggest that any doubt concerning the need to supplement the NEPA

documents be resolved in favor of additional documentation.

*San Luis Obispo Mothers for Peace*, 799 F.2d at 1271.

In the supplemental EA, the NRC responded to our concerns by stating: "the staff has examined that data and assured itself that the information is still current." The Sierra Club maintains that the supplemental EA fails to support the agency's conclusion. The Appeal Board refused to consider the Sierra Club's criticisms because they had not been presented to the Licensing Board. *See Pacific Gas and Elec. Co.*, 26 NRC at 462. However, the NRC did not issue the supplemental EA until after the Licensing Board hearings were complete. Accordingly, we can read no waiver into the Sierra Club's conduct as to the supplemental EA. On remand, the agency should consider the Sierra Club's criticisms of the supplemental EA.

## CONTENTION I(B)(7)

The Sierra Club argues that the denial of contention I(B)(7), concerning the duty to consider alternatives, is not supported by the record. This argument lacks merit.

Contention I(B)(7) states:

the Reports [submitted by PG & E] fail to include consideration of certain relevant conditions, phenomena and alternatives necessary for independent verification of claims made in the Reports regarding consistency of the proposed reracking with public health and safety, and the environment, and with federal law.

In particular, the Reports fail to consider:

7) alternative on-site storage facilities including:

(i) construction of new or additional storage facilities and/or;

(ii) acquisition of modular or mobile spent nuclear fuel storage equipment, including spent nuclear fuel storage casks

*In re Pacific Gas and Elec. Co.*, 26 NRC at 173–74. The Licensing Board found that PG & E had in fact considered and rejected these two alternatives because they would

not increase safety, and might actually decrease safety because of the extra fuel handling required. *In re Pacific Gas and Elec. Co.*, 26 NRC at 174, 184–86. The Board also found that the alternatives were quite costly and that casks for dry storage of recently discharged fuel were not currently available. *Id.* Accordingly, the Board denied the Sierra Club's contention.

▮▮▮ This court cannot overturn the Licensing Board's findings unless we find that they are not supported by substantial evidence. *See Carstens v. NRC*, 742 F.2d 1546, 1558 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985). It appears that during the hearings, PG & E presented the testimony of two expert witnesses and several exhibits to support its position. *See In re Pacific Gas and Elec. Co.*, 26 NRC at 185–86. The evidence showed that the alternatives were potentially less safe, more costly, and for one of the alternatives, unavailable. *Id.* The Sierra Club rebutted this evidence with the testimony of a witness that the Board found had "limited or no experience with any of the technical subjects at issue in this proceeding." *Id.* at 182.[7]

On review in this court, the Sierra Club's sole objection to the evidence PG & E presented at the hearings is that the testimony of one of PG & E's experts "was seriously flawed" and thus not to be believed. This court gives great deference to credibility determinations made by administrative law judges. *See General Teamsters Local No. 162 v. NLRB*, 782 F.2d 839, 842–43 (9th Cir.1986); *see also* Fed.R.Civ.P. 52(a) ("due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses"). Furthermore, even if that witness's testimony was deficient, the testimony of the other PG & E witness and the submitted written evidence substantially support the Board's conclusion. *See In re Pacific Gas and Elec. Co.*, 26 NRC at 185–86. Accordingly, the Appeal Board did not err by affirming the Licensing Board's denial of contention I(B)(7). *See Goldsmith v. Director, Office of Workers Compensation Programs*, 838

---

7. By contrast, the Licensing Board found that PG & E's witnesses had expertise in structural, nuclear, civil, and reactor operations engineer-ing. *In re Pacific Gas and Elec. Co.*, 26 NRC at 181–82.

F.2d 1079, 1081 (9th Cir.1988) ("When substantial evidence supports ... a finding of fact and especially when the credibility of witnesses is involved, we will not disturb that finding on review." (quoting *Dorris v. Director, OWCP*, 808 F.2d 1362, 1364 (9th Cir.1987))).

### CONCLUSION

We hold that the Appeal Board acted arbitrarily and in violation of applicable standards when it declared the Sierra Club's zircaloy-fire contention inadmissible. The Licensing Board must hold a hearing on the contention and develop a record appropriate for review. We remand for that purpose. On remand, the Licensing Board should also consider arguments concerning the adequacy of the NRC's supplemental EA.

The Sierra Club has requested injunctive relief during the pendency of further proceedings in this case. However, this request is not supported by a showing of imminent and irreparable harm sufficient to warrant such relief. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). Accordingly, the Sierra Club's request is denied without prejudice.

The petition is granted in part and denied in part, and the case is remanded.