**Cerefino COLOMA, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.**

**No. 88–7445.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1989.

Decided Feb. 23, 1990.

John R. Hillsman, McGuinn, Hillsman & Palefsky, San Francisco, Cal., for petitioner.

Mark H. Tune, Harbinson, Carlson & Tune, San Francisco, Cal., for intervenor.

No appearance by counsel for respondent.

Before SNEED, HUG and LEAVY, Circuit Judges.

SNEED, Circuit Judge:

Cerefino Coloma seeks benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50 (1982 & Supp. V 1987) for permanent disability sustained in the course of his employment with the Chevron Shipping Company (Chevron). Administrative Law Judge (ALJ) Karst denied benefits on the basis that Coloma's occupation of messman and cook was not "maritime employment" under Section 2(a) of the 1972 amendments to the Act. The Benefits Review Board (BRB) affirmed the ALJ's decision. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Cerefino Coloma was employed as a messman and cook by the Chevron Shipping Company from 1974 to 1982. Coloma alleged that, as of about 1978, his hands hurt when wet. Coloma filed a claim on June 20, 1984, seeking benefits for permanent disability under the LHWCA. At a formal hearing before ALJ Karst, the parties stipulated that Coloma had developed a benign keratoma with lichnoid dermatitis on both hands, that this illness arose out of and in the course of Coloma's employment with Chevron, and that it resulted from repeated exposure to the harsh cleansing chemicals used by the company. The parties stipulated further that Coloma's exposure to these chemicals occurred on a "maritime situs," and that the occupational illness had permanently disabled Coloma, preventing him from engaging in his accustomed trade.

In his May 21, 1986 decision and order, the ALJ accepted all of the above as true and determined that Coloma's claim should be considered pursuant to the 1972 Amendments to the LHWCA. See Pub.L. No. 92–576, 86 Stat. 1251, 1251 (1972).[1] The sole issue in dispute is whether Coloma's occupation as messman and cook constitutes "maritime employment" under Section 2(a) of the 1972 Amendments.[2] ALJ Karst, in his May 21, 1986 opinion, found that:

Claimant is a 56–year–old former messman/cook. He served 20 years in that capacity with the U.S. Navy and five more with Chevron. Between 1977 and 1982, he worked in the "Seagull Inn", the Chevron "crews mess" on the Richmond Longwharf. Undisputed testimony ... establishes that the primary function of the Seagull Inn was to provide meals to the officers and seamen of visiting Chevron tankers while their shipboard stewards took shore leave. The Seagull Inn also served the crews of Chevron's "Inland Fleet", the harbor tugs and barges ordinarily berthed at the Richmond Longwharf, together with occasional visitors like Coast Guard officers, customs offi-

---

1. Although 33 U.S.C. § 902(3) was amended again in 1984, see Pub.L. No. 98–426, 98 Stat. 1639 (1984), the 1984 Amendments do not apply here. The ALJ concluded that Coloma's claim arose on July 28, 1982, when a physician explained to Coloma the relationship between his illness and his occupational chemical exposure. Therefore, his claim arose prior to the effective date of the 1984 Amendments.

2. Section 2(a) of the 1972 Amendments defines a maritime employee as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." Pub.L. No. 92–576, § 2(a), 86 Stat. 1251, 1251 (1972).

cials, harbor pilots, and outside contractors. Though these later, occasional visitors were charged for their meals, the seamen from Chevron's seagoing and inland fleets dined for free "in lieu of a meal allowance". Moreover, since the Seagull Inn is located on the Longwharf itself, within the gates of the Richmond refinery, it was never open to the general public.

Undisputed testimony from the claimant and former Seagull Inn cook Miguel Presa establishes that Chevron closed the Inn in 1982, but transferred most of its employees to shipboard positions on tankers owned by respondent's corporate affiliate, Chevron, U.S.A., Inc., or "CUSA". Claimant himself was transferred to the sea-going CUSA tanker HILYER BROWN on July 14, 1982. Adam, Presa, and claimant all agree that, whether he worked ashore at the "Seagull Inn" or afloat on a CUSA tanker, claimant's duties were always the same, preparing and serving meals to hungry seamen.

The ALJ denied benefits on the basis that, as a messman and cook, Coloma had not been a "maritime employee" under 33 U.S.C. § 902(3) as amended in 1972. Relying on the Supreme Court's opinion in *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), the ALJ stated that:

Claimant's tasks of cleaning tables, washing dishes and cooking were neither "inherently maritime" nor were they significantly different from the tasks that are performed in dining halls, cafeterias and restaurants on land.... The evidence does not establish that claimant's employment involved any aspect of the process of *loading, unloading, repairing or building vessels*. Because the "Seagull Inn" principally fed seamen and not longshoremen, claimant's work was in aid of Chevron's seafaring and navigational activities, and not in aid of any longshoring functions performed on the wharf.

(Emphasis added.)

Coloma appealed to the Department of Labor's Benefits Review Board. In its August 12, 1988, review of the ALJ's decision, the BRB affirmed, also relying on *Herb's Welding*.

On appeal to this court, appellant asserts that the ALJ and BRB erred by applying the test articulated in *Herb's Welding*. He argues that the language from *Herb's Welding* adopted below is merely *dicta*, and need not be followed by this court. He entreats this court to apply instead the standard it articulated in *Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957 (9th Cir.1975), *cert. denied*, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976). In *Weyerhaeuser*, we held that the occupational test under section 902(3) requires that the employee's job "have a realistically significant relationship to 'traditional maritime activity....'" *Id.* at 961 (citation omitted). Appellant asserts that there exists a "long and unbroken line" of cases applying *Weyerhaeuser*, and that we should not disturb such firmly entrenched precedent. Applying the *Weyerhaeuser* standard, he contends, he is eligible for benefits as a maritime employee.

In the alternative, appellant argues that he also meets the standard articulated by the Supreme Court. He argues that his job was "essential" to the overall loading and unloading process because Chevron's longshoring activities could not continue uninterrupted without his services. He points further to the result in *Chesapeake & Ohio Ry. Co. v. Schwalb*, —— U.S. ——, 110 S.Ct. 381, 385, 107 L.Ed.2d 278 (1989), where, he contends, the Supreme Court held that a "janitor" is a maritime employee within the meaning of the statute. He argues that if a "janitor" is covered, then a messman/cook clearly is covered.

This court has jurisdiction of this matter pursuant to 33 U.S.C. § 921(c).

## II.

### STANDARD OF REVIEW

In reviewing the decision of the ALJ under 33 U.S.C. § 921(b), the "BRB must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence." *Todd*

*Shipyards Corp. v. Black,* 717 F.2d 1280, 1284 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). This court of appeals "scrutinizes [BRB] decisions for errors of law and for adherence to the statutory standard" described above. *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980). The BRB is not a policymaking body; therefore, "its interpretations of the LHWCA are not entitled to any special deference." *Todd Shipyards,* 717 F.2d at 1284.

### III.

### DISCUSSION

#### A. *The Situs Requirement*

Prior to the 1972 Amendments, the LHWCA provided compensation for the disability or death of an employee only where the employee's injury occurred on the "navigable waters of the United States (including any dry dock)...." Act of Mar. 4, 1927, Pub.L. No. 69–803 § 3(a), 44 Stat. 1424, 1426. With the Amendments, Congress extended the covered *situs,* which had previously "stopped at the water's edge." *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 259, 97 S.Ct. 2348, 2355, 53 L.Ed.2d 320 (1977). The amended Act covered also "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." Pub.L. No. 92–576, § 2(c), 86 Stat. 1251, 1251 (1972) (amending section 3(a) of the 1927 Act). This was the "situs" requirement.

#### B. *The Status Requirement*

█ The 1972 Amendments also "describe[d] affirmatively the class of workers Congress desired to compensate."[3] *Northeast Marine,* 432 U.S. at 264, 97 S.Ct. at 2357. That is, Congress inserted a *sta-*

*tus* requirement, which was, for the first time, clearly separate and distinct from the *situs* requirement. *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 79, 100 S.Ct. 328, 335, 62 L.Ed.2d 225 (1979). After the 1972 Amendments, the Act required that eligible workers be "engaged in *maritime employment,* including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker ...." § 2(a), 86 Stat. at 1251 (emphasis added). Employees clearly must meet both the *status* and *situs* requirements in order to be eligible for coverage. *See Chesapeake & Ohio Ry. Co. v. Schwalb,* —— U.S. ——, 110 S.Ct. 381, 384–85, 107 L.Ed.2d 278 (1989); *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 423–24, 105 S.Ct. 1421, 1427–28, 84 L.Ed.2d 406 (1985); *P.C. Pfeiffer,* 444 U.S. at 79, 100 S.Ct. at 335. In the instant case, the parties do not dispute that Coloma meets the *situs* requirement. The dispute, rather, concerns whether he meets the *status* requirement.

Congress did not explicitly define terms such as "maritime employment" and "longshoremen" appearing in 33 U.S.C. 902(3). *See Northeast Marine,* 432 U.S. at 265, 97 S.Ct. at 2358. Relying on the Senate and House Reports, the Supreme Court concluded that Congress intended "to cover those workers involved in the essential elements of unloading a vessel—taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area." *Id.* at 267, 97 S.Ct. at 2359. The Court emphasized further "that persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered." *Id.*

In *Herb's Welding,* the Supreme Court firmly restated the applicable status test:

> [In enacting the maritime employment requirement,] Congress did not seek to cover all those who breathe salt air. Its purpose was to cover those workers on the situs who are involved in the essen-

---

**3.** Prior to the 1972 Amendments, the LHWCA described a class of covered workers by exclusion: "The term 'employee' does not include the master or member of a crew of any vessel, nor

any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." § 2(3), 44 Stat. at 1424, 1425 (1927).

tial elements of loading and unloading; it is "clear that persons who are on the situs but not engaged in the overall process of loading or unloading vessels are not covered." While "maritime employment" is not limited to the occupations specifically mentioned in § 2(3), neither can it be read to eliminate any requirement of a connection with the loading or construction of ships. As we have said, the "maritime employment" requirement is "an occupational test that focuses on loading and unloading." The Amendments were not meant "to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity." *We have never read "maritime employment" to extend so far beyond those actually involved in moving cargo between ship and land transportation.*

470 U.S. at 423–24, 105 S.Ct. at 1427–28 (emphasis added; citations and footnote omitted). And, if there were any doubt about the Supreme Court's view, that doubt was resolved by its recent opinion in *Chesapeake & Ohio Ry. Co.*[4]

4. [I]t has been clearly decided that, aside from the [occupations specified in the statute], land-based activity occurring within the § 903 situs will be deemed maritime only *if it is an inte*gral or essential part of loading or unloading a vessel.

   . . . [T]he maritime employment requirement as applied to land-based work other than longshoring and the other occupations named in § 902(3) is an occupational *test* focusing on loading and unloading. Those not involved in those functions do not have the benefit of the Act.

110 S.Ct. at 384–85.

5. There is general agreement in case law and legal encyclopedias that *obiter dicta* or dicta is " 'language unnecessary to a decision. . . .' " *Lawson v. United States,* 176 F.2d 49, 51 (D.C. Cir.1949), *cert. denied,* 339 U.S. 934, 70 S.Ct. 663, 94 L.Ed. 1353 (1950); 20 Am.Jur.2d *Courts* § 74 (1965); 21 C.J.S. *Courts* § 190 (1940). *See also Sarnoff v. American Home Prod. Corp.,* 798 F.2d 1075, 1084 (7th Cir.1986) ("A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding. . . .").

6. The Court concluded that:

Appellant argues that the occupational test articulated in *Herb's Welding* is dicta, and therefore is not binding authority in the instant case. We disagree.[5] The Court had to define maritime employment in order to decide *Herb's Welding* because the question there was whether the occupational duties of a welder injured while working on a fixed platform in Louisiana waters constituted maritime employment under the Act.[6]

Appellant asserted in oral argument that there was "no mention of the significant relationship test in *Herb's Welding,*" and thus argues that the Supreme Court did not intend *Herb's Welding* to reverse the law of circuits applying *Weyerhaeuser*-type standards. Appellant is wrong. In *Herb's Welding,* the Supreme Court reversed the Fifth Circuit, which had applied the *Weyerhaeuser* test, as adopted in a 1980 Fifth Circuit case.[7] In so doing, the Court stated that "[t]he Fifth's Circuit's expansive view of maritime employment is . . . inconsistent with our prior cases under the 1972 Amendments to the LHWCA." 470 U.S. at 423, 105 S.Ct. at 1427. It then proceeded to substitute its "essential ele-

[Gray's] work had nothing to do with the loading or unloading process, nor is there any indication that he was even employed in the maintenance of equipment used in such tasks. . . . He built and maintained pipelines and the platforms themselves. There is nothing inherently maritime about those tasks. They are also performed on land, and their nature is not significantly altered by the maritime environment. . . .

   . . . To hold that Gray was *necessarily* engaged in maritime employment because he was on a drilling platform would ignore Congress' admonition that not everyone on a covered situs automatically satisfies the status test.

470 U.S. at 425, 105 S.Ct. at 1428 (footnote omitted).

7. The Fifth Circuit, in *Herb's Welding, Inc. v. Gray,* 703 F.2d 176, 179 (5th Cir.1983), relied on the test set forth in *Odom Constr. Co. v. United States Dep't of Labor,* 622 F.2d 110, 113 (5th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981). The Fifth Circuit panel in *Herb's Welding* read the *Odom* test as requiring employees to show that their employment had a "realistically significant relationship to traditional maritime activity" in order to obtain coverage under Section 902(3). *Id.*

ments of loading and unloading" test for the *Weyerhaeuser* "significant relationship" test. In *Herb's Welding*, the Supreme Court went beyond merely rejecting the Fifth Circuit's *application* of the "significant relationship" test; it rejected the test itself. Furthermore, in *Chesapeake & Ohio Ry. Co.*, the Court explicitly granted certiorari to resolve the conflict between the position adopted by Virginia Supreme Court, the lower court in that case, and several federal circuits. 110 S.Ct. at 384. The Virginia Supreme Court had adopted the "significant relationship test" whereas the circuits in conflict with it had adopted the "loading and unloading" test. The Court clearly embraced the latter test, firmly rejecting more expansive interpretations of the Act.

Appellant also asserted in oral argument that there exists a "long and unbroken" line of decisions applying *Weyerhaeuser*. This assertion also is plainly wrong. The long line of decisions was broken following *Herb's Welding*. In the only Ninth Circuit decision construing Section 902(3) since *Herb's Welding*, this court clearly deferred to the Supreme Court's definition of maritime employment, thereby implicitly rejecting the *Weyerhaeuser* "significant relation-

ship" test. *See Dorris v. Director, Office of Workers' Compensation Programs*, 808 F.2d 1362, 1364 (9th Cir.1987).[8] Although there are only a few district and circuit court cases applying Section 902(3) since *Herb's Welding*, almost all rely on Supreme Court doctrine in lieu of previously established circuit law. *See Bailey v. Global Marine, Inc.*, 714 F.Supp. 235, 240 (S.D.Tex.1989) (citing to *Herb's Welding* test as supplanting Fifth Circuit standards); *Clark v. Solomon Navigation, Ltd.*, 631 F.Supp. 1275, 1281–83 (S.D.N.Y. 1986) (applying *Herb's Welding* test in place in Second Circuit test);[9] *but see Sanders v. Alabama Dry Dock & Shipbuilding Co.*, 841 F.2d 1085, 1088 (11th Cir.1988) (applying a test similar to the Ninth Circuit's *Weyerhaeuser* test).[10]

Appellant contends that the cases continue to define the phrase "maritime employment" as a "general" and "catch-all" phrase. This is not so. The cases interpreting *Herb's Welding* have recognized the narrowness and specificity of the Supreme Court's test, and have "heed[ed] the signal of the Supreme Court" in accepting this more restrictive standard. *See, e.g., West v. Chevron U.S.A., Inc.*, 615 F.Supp. 377, 381 (E.D.La.1985).[11]

**8.** In *Dorris*, we denied coverage to a claimant whose "regular duties consisted of driving his truck onto the dock, where containers were placed on the vehicle's chassis, and driving to the consignee's delivery place. He also delivered containers from the consignee's delivery place to the harbor." *Dorris*, 808 F.2d at 1364. We held that such functions were not maritime, "when the goods are unloaded from a ship and loaded aboard another *by other workers*." *Id.* at 1365 (emphasis added). Although we did not cite explicitly to *Herb's Welding* in *Dorris*, we relied on its precedents, such as *Northeast Marine* and *Pfeiffer*, for our emphasis on the test requiring involvement in loading and unloading of ships, and did not rely on *Weyerhaeuser* or its progeny.

**9.** The Second Circuit's standard was nearly identical to *Weyerhaeuser*. *See Fusco v. Perini N. River Assoc.*, 622 F.2d 1111, 1113 (2d Cir. 1980), *cert. denied*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981).

**10.** The Eleventh Circuit opinion in *Sanders* provides the lone exception among post-*Herb's Welding* cases to the general rule that Supreme Court doctrine interpreting Section 902(3) replaces circuit doctrine if the two are inconsist-

ent. Yet, the Eleventh Circuit has fluctuated in its interpretation of Section 902(3). Although its only post-*Herb's Welding* case, *Sanders*, relies on a Fifth Circuit case, *Odom Constr. Co. v. United States Dep't of Labor*, 622 F.2d 110, 113 (5th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981), which articulates the "significant relationship" test, a pre-*Herb's Welding* Eleventh Circuit case, *Browning v. B.F. Diamond Constr. Co.*, 676 F.2d 547, 549–50 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983), relies on the "loading and unloading" test set forth by the Supreme Court in *Northeast Marine*. In deciding *Sanders*, the Eleventh Circuit therefore appears to have ignored not only Supreme Court doctrine, but also its own precedent. Thus, in light of this confusion as to precisely what the Eleventh Circuit standard is, we decline to accord precedential value to the *Sanders* decision.

**11.** In *West*, the district court examined generally concepts of what is maritime, for purposes other than interpreting the LHWCA. The court referred to *Herb's Welding* as revealing that the Supreme Court has taken a "restrictive view" of what is maritime. 615 F.Supp. at 381. It concluded further that the Supreme Court views

We need not reach the question of whether Coloma might have met the standard articulated by the Ninth Circuit in *Weyerhaeuser.* To apply that test, as appellant urges us to do, would be to ignore the clear and direct mandate from the Supreme Court. Our duty of obedience to the Supreme Court is not conditioned on an explicit reversal by name of prior inconsistent Ninth Circuit authority.

■ In the alternative, appellant argues that he is covered even if the *Herb's Welding* and *Chesapeake* standard is applied. He contends that his functions were "essential" to the longshoring operations of Chevron because the presence of the Seagull Inn permitted those crew members performing the loading and unloading duties to remain aboard the vessel during loading and unloading operations. That is not the case. The Seagull Inn closed in 1982, and Chevron has not been forced to shut down its operations. Those crew members apparently now use a cafeteria located about a mile away or are fed by messmen who remain aboard the tanker. Coloma's functions were not essential.

Finally, appellant contends that the *result* in *Chesapeake Ohio Ry. Co.* provides support for his claim. Specifically, he argues that the claimants in *Chesapeake Ohio Ry. Co.* were janitors whose occupational duties were no more essential to loading and unloading than those of a messman/cook. Appellant's argument misinterprets the facts of that case. Two of the claimants in *Chesapeake Ohio Ry. Co.* were responsible for cleaning spilled coal from rollers and conveyor belts that are part of the overall mechanical loading system at a location where coal is loaded from railway cars to a ship on navigable waters. 110 S.Ct. at 383. The third claimant maintained and repaired loading equipment. The Supreme Court held that:

> [E]mployees who are injured while maintaining or repairing equipment essential to the loading or unloading process are covered by the Act. Such employees are engaged in activity that is an integral part of and essential to those overall processes.... Someone who repairs or

"expansive notions" of what is maritime "with

maintains a piece of loading equipment is just as vital to and an integral part of the loading process as the operator of the equipment.

> ... The determinative consideration is that the ship loading process could not continue unless the [functions served by the claimants were performed].

*Id.* at 385–86.

This case is easily distinguishable. If the equipment repaired or maintained by the claimants in *Chesapeake Ohio Ry. Co.* stopped functioning adequately, the loading and unloading process could not continue. No such dependence exists in this case. After the Seagull Inn closed, Chevron's longshoring operation continued. Coloma's duties at the Seagull Inn simply were not essential to the loading and unloading process.

Therefore, we hold that, under the Supreme Court's binding interpretation of Section 902(3) of the 1972 Amendments, Coloma was not engaged in "maritime employment."

We affirm the August 12, 1988 decision of BRB and deny benefits under the LHWCA.

AFFIRM.