TODD PACIFIC SHIPYARDS CORPORATION; Aetna Casualty and Surety Company, Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; Johanna Picinich; Lockheed Shipbuilding Co.; Todd Pacific Shipyards Corporation, et al., Respondents.

No. 89–70309.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1990.

Decided Sept. 18, 1990.

As Amended Nov. 8, 1990.

---

Russell A. Metz, Witherspoon, Kelley, Davenport & Toole, P.S., Seattle, Wash., for petitioners.

J. Bradford Doyle, Stafne & Doyle, Seattle, Wash., for respondents.

Before WRIGHT, WALLACE and KOZINSKI, Circuit Judges.

WALLACE, Circuit Judge:

Todd Pacific Shipyards Corporation (Todd) appeals from the decision of the Department of Labor Benefits Review Board (Board), assessing liability against Todd for the asbestos-related death of a former employee, Picinich. Todd contends that the Board erred in reversing the Department of Labor Administrative Law Judge's (ALJ) ruling that former employer Lockheed Shipbuilding Company (Lockheed), rather than Todd, was liable to Picinich. Todd argues that the Board misapplied the "last responsible employer" rule which our circuit has used to determine which of an employee's employers is liable under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. (Act). The Board had jurisdiction over this case pursuant to 33 U.S.C. § 921(b)(3). We have jurisdiction over this timely appeal pursuant to 33 U.S.C. § 921(c). We reverse.

I

Lockheed employed Picinich as a pipefitter for various periods between 1957 and 1972 and from 1974 to January 1981. It is undisputed that during that time Picinich suffered significant exposure to asbestos. Todd employed Picinich for various periods between 1956 and 1973 and from February

1981 to November 1981. During his final stint at Todd, Picinich worked aboard the *U.S.S. Reasoner,* a ship which had undergone an asbestos removal procedure.

In September of 1981, Picinich visited his family doctor complaining of an upper respiratory infection and cough. When this condition persisted, Picinich's family physician referred him to a respiratory specialist who made a tentative diagnosis of lung cancer. This diagnosis was confirmed by a bronchoscopy and lung biopsy. Thereafter, Picinich's health rapidly deteriorated, and he died the following year. The autopsy report showed, among other things, that Picinich had suffered from asbestosis of the lungs. Neither Todd nor Lockheed dispute Picinich's cause of death.

Prior to his death, Picinich had filed a claim for compensation under the Act against Todd, Lockheed and other employers who have since been dismissed from the case. Upon his death, Picinich's wife, Johanna, proceeded with the claim, seeking widow's benefits under the Act. After a three day hearing, the ALJ found that Johanna was entitled to death benefits. He also concluded that Lockheed was the responsible, and therefore liable, employer. Lockheed appealed that determination and in a published Decision and Order dated May 31, 1989, the Board reversed the ALJ's finding that Lockheed was the last responsible employer and instead assigned that status to Todd.

We review Board decisions "for errors of law and for adherence to the statutory standard governing the Board's review of the [ALJ's] factual determinations." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980) (*Bumble Bee Seafoods*); *King v. Director, Office of Workers' Compensation Programs,* 904 F.2d 17, 18 (9th Cir.1990). Statutory direction requires the Board to review the ALJ's findings for "substantial evidence." 33 U.S.C. § 921(b)(3); *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1284 (9th Cir.1983) (*Black*) ("The [Board] must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence."), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). In order to determine whether the Board has complied with this standard, we must "conduct an independent review of the administrative record." *Bumble Bee Seafoods,* 629 F.2d at 1329.

## II

The only issue we need address on this appeal is whether Todd or Lockheed must assume the liability for Picinich's asbestos-related death. When two separate employers covered by the Act may be responsible for a work-related injury or disease, we have held that

> Congress intended that the employer during the last employment *in which the claimant was exposed to injurious stimuli,* prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.

*Black,* 717 F.2d at 1284, *quoting Travelers Insurance Co. v. Cardillo,* 225 F.2d 137, 145 (2d Cir.) (emphasis added), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955); *Lustig v. United States Department of Labor,* 881 F.2d 593, 596 (9th Cir.1989); *Kelaita v. Director, Office of Workers' Compensation,* 799 F.2d 1308, 1311 (9th Cir.1986).

Applying this standard, the ALJ found that Picinich's exposure to asbestos while working aboard the *Reasoner* "was minimal," and therefore determined that Picinich had not been exposed to "injurious stimuli" at Todd. Because the evidence of injurious exposure to asbestos at Lockheed was uncontroverted, the ALJ concluded that Lockheed was the responsible employer.

The Board reversed the decision of the ALJ and shifted the responsibility for the payment of benefits to Todd. In doing so, the Board held that the ALJ's finding of only minimal exposure to asbestos at Todd was supported "by the relevant evidence" in the record. However, the Board concluded that because Picinich was exposed to some asbestos while working for Todd in 1981, by definition he was "exposed to injurious stimuli." Our task is to resolve these conflicting interpretations concerning when

an employee is exposed to "injurious stimuli" for purposes of the last covered employer rule.

Although neither the Board nor Lockheed discuss our decision in *Black*, it controls our resolution of this issue. In rejecting the employer's argument that the aggrieved worker must prove that his disease was caused entirely by the covered employer, we stated in *Black:* "All that must be proved is that the covered employer exposed the worker to injurious stimuli *in sufficient quantities to cause the disease.*" 717 F.2d at 1286 (emphasis added). Thus, under our decision in ·*Black*, minimal exposure to offensive stimuli at a place of employment is not sufficient to place responsibility on a covered employer in the absence of proof that exposure in such quantities had the potential to cause his disease.

■ In its brief on appeal, Lockheed directs our attention to a number of Board decisions which, Lockheed claims, disavow any type of causation inquiry in applying the last covered employer rule. These cases, however, are immaterial to our decision. "Because the [Board] does not make policy, its interpretations of the [Act] are not entitled to any special deference." *Id.* at 1284; *see also Coloma v. Director, Office of Workers Compensation Programs,* 897 F.2d 394, 397 (9th Cir.1990). Our decision must be governed by our circuit's clear precedent in *Black*, and Lockheed has not even cited, let alone distinguished, that controlling authority.

■ The Board, therefore, erred when it concluded that because Picinich had received "minimal exposure" to asbestos while working for Todd, Picinich *a fortiori* must have been exposed to injurious stimuli. · As the standard articulated in *Black* makes clear, minimal exposure to asbestos is not sufficient to affix liability upon Todd. Rather, Picinich's employment with Todd during 1981 must have "exposed [him] to injurious stimuli in sufficient quantities to cause the disease [asbestosis]." *Black*, 717 F.2d at 1286. Because the Board applied the incorrect legal standard in its resolu-

tion of this case, its decision must be reversed.

### III

■ Ordinarily, we would remand to the Board for it to decide this case under the correct legal standard. *See Perkins v. Marine Terminals Corp.,* 673 F.2d 1097, 1105 (9th Cir.1982). It is not, however, necessary in this case. On remand, the only issue the Board would face would be whether substantial evidence supports the ALJ's determination that Picinich was not exposed to enough asbestos potentially to cause injury while working for Todd in 1981. Since the Board has already found that the ALJ's conclusion of minimal exposure is supported by the relevant evidence in the record, remand is pointless. The Board already having made the necessary evaluation, it then becomes our responsibility "to conduct an independent review of the administrative record," *Bumble Bee Seafoods,* 629 F.2d at 1329, to determine whether the ALJ's factual finding, as already accepted by the Board, is supported by substantial evidence. We therefore next address whether the ALJ's finding that Picinich received only minimal exposure to asbestos while working for Todd aboard the *Reasoner* in 1981 is supported by substantial evidence in the record. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Goldsmith v. Director, Office of Workers Compensation Programs,* 838 F.2d 1079, 1081 (9th Cir.1988) (internal quotations and citation omitted).

The *Reasoner,* on which Picinich spent the vast majority of his time while working for Todd in 1981, underwent a thorough asbestos removal procedure that was completed by November 25, 1980, prior to Picinich's tenure. Unlike more customary partial removal procedures, this one was designed to completely eliminate asbestos from the ship. The removal contractor used an involved removal process: first wetting down the area so that asbestos particles would be less likely to disperse into the air, then placing drop cloths to

prevent asbestos from falling into bilge areas, removing the asbestos with knives and tin-snip devices to avoid dispersal, vacuuming the area, and finally, washing the area thoroughly and rinsing the bilges several times to remove any residual asbestos. The ALJ found that this removal process was largely successful, and the record supports that determination. Gregory, an assistant foreman, who worked aboard the *Reasoner* at the same time as Picinich, and Allen, a marine chemist, both testified that after the asbestos removal project, the machinery spaces and engine and fire rooms where Picinich worked appeared clean and visually were free of asbestos.

■ Lockheed disputes the ALJ's finding and directs our attention to the testimony of three of Picinich's co-workers who testified that they observed asbestos residue and dust and asbestos particles in the air after the removal process had been completed. The ALJ discredited this testimony because upon cross-examination all three admitted that they were unable to distinguish between asbestos and other non-asbestos insulation materials, and, soon after Picinich began working on the *Reasoner*, new non-asbestos insulation was installed that could easily have been the source of the particles, dust and residue seen by the three witnesses. That they were unable to distinguish visually asbestos from other non-asbestos types of insulation is not surprising given that Allen, the marine chemist, testified that he too could not do so. "Where the ALJ relies on witness credibility in reaching his decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence[,] or where the determinations are inherently incredible or patently unreasonable." *Cordero v. Triple A Machine Shop*, 580 F.2d 1331, 1335 (9th Cir.1978) (citations and internal quotations omitted), *cert. denied*, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979); *Duncanson–Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 833 (9th Cir.1981). The ALJ's decision to discredit the three witnesses' testimony that asbestos was present was not "inherently incredible or patently unreasonable."

Lockheed also points to testimony in the record that certain gaskets still contained some asbestos after the removal process and that some pipefitters at Todd disregarded Todd's work rules and used grinders and wire wheels to clean the flanges of these gaskets thereby releasing asbestos fibers into the air. This evidence, however, did not require the ALJ to make a different finding. First, the record contains no evidence that Picinich, a supervising foreman and a worker whom all witnesses described as experienced and conscientious, ground any gaskets and exposed himself directly to the asbestos fibers. But even if Picinich was exposed to some asbestos fibers in this manner, Lockheed directs us to no evidence in the record and we have found none which indicates that such an exposure would have occurred in "sufficient quantities to cause [Picinich's] disease." *Black*, 717 F.2d at 1286.

In finding that Picinich's exposure to asbestos aboard the *Reasoner* was minimal, the ALJ placed significant reliance on the testimony of Allen, the marine chemist, concerning the testing he had done on the *Reasoner* after the completion of the asbestos removal project. Allen tested the air aboard the *Reasoner* and found that the concentration of asbestos fiber in the air was well below the limit set by Navy regulations which Todd used to determine whether it was safe for its employees to return to work aboard the ship. He testified that based on this testing he had concluded that the ship was free of a hazardous level of asbestos.

Lockheed attacks the ALJ's reliance on Allen's testimony. It claims that the ALJ relied on Allen's calculation that the asbestos levels he found were 250 times below the limit allowed by the government-prescribed level. Obviously, asbestos levels were 25 times below the approved levels. Lockheed also questions whether the federally-prescribed level is even an accurate indicator of when an asbestos hazard exists. We agree with Lockheed that the ALJ credited Allen's calculation of the dif-

ference between the asbestos level on the *Reasoner* and the allowed government levels. We also agree that whether asbestos levels are below the permissible federal level may not necessarily be dispositive of the factual inquiry into whether an asbestos hazard exists. But these arguments do not undermine our conclusion that substantial evidence supports the ALJ's decision.

The ALJ found only that *"[i]n the absence of contrary evidence* I find that levels of asbestos below the levels permitted by applicable federal regulations are noninjurious." This statement reveals that the ALJ did not regard either the 250–times comparison or the regulations as dispositive. Instead, the ALJ merely found that in the absence of any evidence showing that the asbestos levels found by Allen were hazardous, he would accept the regulations as evidence that the asbestos levels were not hazardous. There is nothing unreasonable with this conclusion. In fact, the ALJ's statement identifies the crux of the entire evidentiary inquiry. Lockheed simply did not submit any evidence that the asbestos levels on the *Reasoner* were hazardous. Indeed, Lockheed's entire brief on appeal and the record evidence to which it points is primarily directed at showing that Picinich was exposed to asbestos. But as we discussed above, that is not enough. In order to hold Todd responsible under the last covered employer rule, Picinich must have been exposed aboard the *Reasoner* to asbestos "in sufficient quantities to cause [his] disease." *Black*, 717 F.2d at 1286. There is substantial evidence in the record to indicate he was not.

Based on our review of the entire record, we conclude that substantial evidence supports the ALJ's finding that Picinich was not exposed to a sufficient quantity of asbestos aboard the *Reasoner* potentially to cause his lung disease. Therefore, we reverse the decision of the Board and remand for a reinstatement of the ALJ's decision.

REVERSED AND REMANDED WITH INSTRUCTIONS.