950 F.2d 621
 FOUNDATION CONSTRUCTORS, INC., the Wausau Insurance
Companies, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Willis
Vanover, United States Department of Labor, Respondents.
 No. 90-70380.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Dec. 11, 1991.
 
 Bill Parrish, San Francisco, Cal., for petitioners.
 Esther Herrera, and Thomas M. Pegnim, McLaughlin & Pegnim, Antioch, Cal., for respondents.
 Appeal from the Benefits Review Board.
 Before PREGERSON, FERGUSON and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We review the Benefits Review Board's affirmance of a determination that Willis Vanover was entitled to compensation from Foundation Constructors, Inc., pursuant to the Longshore and Harbor Workers' Compensation Act.
 
 
 2
 * Prior to April 1, 1977, Willis Vanover was employed by the H.R. Lauritzen Co. as a pile butt driver. On that day, Foundation took over the operations of Lauritzen. At about this same time, Vanover's doctor urged him to avoid those parts of his job duties that caused him back pain. Vanover continued to work as a pile butt driver under the new ownership until October 13, 1977. At that point, Vanover's doctor determined that his back condition had deteriorated so far that it had become impossible for Vanover to continue work as a pile butt driver. Hence, on the advice of his doctor, Vanover terminated his employment with Foundation. Vanover's duties as a pile butt driver included operating jackhammers, saws, and drills, and carrying large pieces of concrete, lumber and steel.
 
 
 3
 Vanover filed a state worker's compensation claim against Lauritzen, and the claim was settled for $10,000 in 1980. Vanover worked in a coal mine from 1940 to 1959 and has received benefits under the Black Lung Benefits Act (the "Black Lung Act"), 30 U.S.C. §§ 901-945.
 
 
 4
 This matter commenced on December 22, 1982, when Vanover filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. §§ 901-950, against Foundation. An Administrative Law Judge ("ALJ") conducted a formal hearing, and, after issuing an original decision, issued his Decision on Reconsideration on May 4, 1987. The ALJ found in this latter decision that Vanover was permanently partially disabled due to the condition of his back, and that Foundation was liable to pay compensation to Vanover. The ALJ declined to credit the money Vanover had received from his state worker's compensation claim settlement and Black Lung Act award against the amount owed by Foundation. The ALJ's decision required Foundation to pay interest on any compensation paid late.
 
 
 5
 Foundation appealed to the Benefits Review Board (the "Board"). On September 22, 1989, the Board affirmed the ALJ's decision in all respects except the ALJ's refusal to credit Vanover's state worker's compensation settlement against the amount owed by Foundation. The Board denied Foundation's petition for reconsideration on June 26, 1990, and Foundation filed a petition for review with this court on July 30, 1990. We have jurisdiction over this timely appeal of the Board's decision under 33 U.S.C. § 921(c).
 
 II
 
 6
 Foundation raises three issues on appeal. First, it objects to being held liable in totality for Vanover's disability when Vanover was only employed by Foundation for the last six months of his working life. Second, it contends that the ALJ's direction that interest be paid if Foundation were late in paying the compensation owed to Vanover is improper. Third, it urges that a credit against the amount it owes Vanover be allowed for the award Vanover received under the Black Lung Act. We address these arguments in turn.
 
 
 7
 * Foundation's liability under the Act turns on the last employer rule. As first announced in Travelers Insurance Co. v. Cardillo, 225 F.2d 137, 145 (2d Cir.), cert. denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), and subsequently applied by this court on many occasions, see, e.g., Todd Pacific Shipyards v. Director, OWCP (Picinich), 914 F.2d 1317, 1319 (9th Cir.1990); Kelaita v. Director, OWCP, 799 F.2d 1308, 1311 (9th Cir.1986); Todd Shipyards v. Black, 717 F.2d 1280, 1284 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984), the rule generally holds the claimant's last employer liable for all of the compensation due the claimant, even though prior employers of the claimant may have contributed to the claimant's disability. This rule serves to avoid the difficulties and delays connected with trying to apportion liability among several employers, and works to apportion liability in a roughly equitable manner, since " 'all employers will be the last employer a proportionate share of the time.' " General Ship Service v. Director, OWCP, 938 F.2d 960, 962 (9th Cir.1991), (quoting Black, 717 F.2d at 1285).
 
 
 8
 In Kelaita this court recognized that the last employer rule, as announced in Cardillo, had sprouted a branch. We observed that the traditional last employer rule was still applied in occupational disease cases, but that a new rule had developed in injury cases. See Kelaita, 799 F.2d at 1311. Since both rules were designed to determine whether a subsequent employer bore all the liability for disabilities caused by more than one employer, in Kelaita we said that there was still one rule, the last employer rule, that was "applied differently depending on whether a claimant's disability is characterized as an occupational disease or a two-injury case." Id. Subsequent cases have not been entirely clear on this distinction. Courts addressing occupational disease claims have directly applied the occupational disease branch of the last employer rule without finding it necessary to mention that another branch of the last employer rule exists governing injury cases. See Picinich, 914 F.2d at 1319; General Ship Service, 938 F.2d at 962. Others have described the two-injury branch as the "aggravation rule." See Port of Portland v. Director, OWCP, 932 F.2d 836, 839-840 (9th Cir.1991).
 
 
 9
 We belabor this point slightly because both the ALJ and the Board seem to have been confused in this matter as to whether two different rules existed, and out of caution appear to have applied both. We reaffirm the holding of Kelaita: whether it is characterized as two different rules, or different applications of the same rule, two distinct tests are utilized by courts in multiple employer situations to determine whether a subsequent employer is liable for all of a claimant's disability. The first test is applied in occupational disease cases, and is a direct descendant of the test first announced in Cardillo. It has been referred to both as the occupational disease rule and the last employer rule. The second test is applied in injury or cumulative trauma cases, and has been referred to variously as the two-injury rule, the aggravation rule, or as merely a special application of the last employer rule. We will refer to the first test as the "disease rule," and to the second test as the "two-injury rule." Our task is to determine which applies here.
 
 
 10
 A comparison of the recent cases of this court in which the disease rule and the two-injury rule were applied leads us to conclude that the two-injury rule should apply here. In Picinich and Black, where the disease rule was used, the claimants had lung cancer from worksite exposure to asbestos. In Kelaita, where the two-injury rule was applied, claimant had a "cumulative trauma injury to his right shoulder" that resulted in "an attritional rotator cuff tear." Id. at 1309. The claimant alleged that this injury had occurred at two separate employers where he had operated a steel lathe. Here, the ALJ found that Vanover had a disabling back condition resulting from his activities on the job, which included operating a jackhammer and lifting 100 pound pieces of concrete for both Lauritzen and Foundation. Vanover's back condition is a cumulative trauma injury like the injured shoulder in Kelaita, not a disease like cancer, as in Picinich and Black, and therefore we apply the two-injury rule in this matter.
 
 The rule is applied as follows:
 
 11
 If the disability resulted from the natural progression of a prior injury and would have occurred notwithstanding the subsequent injury, then the prior injury is compensable and accordingly, the prior employer is responsible. If, on the other hand, the subsequent injury aggravated, accelerated or combined with claimant's prior injury, thus resulting in claimant's disability, then the subsequent injury is the compensable injury, and the subsequent employer is responsible.
 
 
 12
 Kelaita, 799 F.2d at 1311. We have emphasized that "the aggravation [two-injury] rule applies 'even though the worker did not incur the greater part of his injury with that particular employer.' " Port of Portland v. Director, OWCP, 932 F.2d 836, 839-40 (9th Cir.1991) (quoting Strachan Shipping Co. v. Nash, 782 F.2d 513, 519 n. 10 (5th Cir.1986) (en banc)). Thus, if the six months Vanover spent jackhammering and engaging in heavy lifting for Foundation "aggravated" his preexisting back injuries, Foundation is liable under the Act.
 
 
 13
 We believe that the Board was correct in determining that substantial evidence existed to support the ALJ's finding that Vanover's back injury was aggravated by his employment with Foundation. There appears to be no disagreement that Vanover's back condition steadily worsened between March and October of 1977, the period of his employment with Foundation, but Foundation contends that such degeneration was due entirely to the inevitable course of pre-March 1977 injuries. However, Vanover's own physician since 1968, Dr. Wang, testified that Vanover's last six months of strenuous work for Foundation was "harmful" to his back condition. Significantly, Dr. Wang was the only doctor to testify who had actually examined Vanover during the period in question.
 
 
 14
 Two other doctors, although unable to speak specifically to the April to October 1977 period, corroborated Dr. Wang's opinion regarding the aggravating effect of Vanover's work activities on his back condition. Dr. Trauner testified that half of Vanover's back condition resulted from the natural progression of his degenerative condition, and half stemmed from his employment tasks. Dr. Swartz attributed Vanover's condition to "cumulative trauma" caused by his "extremely hard" work. We think that there is adequate evidence for a reasonable mind to conclude that Vanover's last six months of jackhammering and pile driving aggravated his preexisting back injury. Hence, the Board did not err in affirming the ALJ's finding of liability on the part of Foundation.
 
 B
 
 15
 Foundation next contests the awarding of post-judgment interest by the ALJ. The Director of the Office of Workers' Compensation Programs (the "Director") construes the Act to allow such interest awards. The issue of whether interest can be required on past-due compensation under the Act is a question of law we review de novo, but as the official charged with administering the Act, "we must accord considerable weight" to the Director's construction of its terms. General Ship Service, 938 F.2d at 961 (citation omitted).
 
 
 16
 The Act has no express provisions regarding interest payments. The Director contends that interest on past-due compensation serves the purposes of the Act in fully compensating workers for their valid claims. The Fourth and Fifth Circuits adhere to this view. See Quave v. Progress Marine, 912 F.2d 798, 800 (5th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2012, 114 L.Ed.2d 99 (1991); Newport News Shipbuilding & Dry Dock v. Director, OWCP, 594 F.2d 986, 987 (4th Cir.1979).
 
 
 17
 Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). We are not to substitute our own construction "for a reasonable interpretation made by the administrator of an agency." Id. at 844, 104 S.Ct. at 2782. It is a truism that a dollar tomorrow is not worth as much as a dollar today. Allowing an employer to delay compensation payments interest-free would reduce the worth of such payments to the claimant, undermining the remedial intent of the Act. We believe that the Director's construction that interest may be required on past-due compensation is reasonable and consistent with the ends of the Act, and so uphold the Board's affirmance of the ALJ's award of interest to Vanover.
 
 C
 
 18
 Finally, Foundation argues that Vanover's Black Lung Act award must be credited against any compensation it must pay Vanover. The applicable provision of the Act provides that "any amounts paid to an employee for the same injury, disability or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or [benefits under the Jones Act] shall be credited against any liability imposed by this chapter." 33 U.S.C. § 903(e) (hereinafter "Section 3(e)"). Thus, whether a credit is due Foundation for the black lung award Vanover received depends on whether such award was "for the same injury [or] disability" as the compensation at issue here.[1]
 
 
 19
 Black Lung Act benefits are only available for pneumoconiosis, see 30 U.S.C. § 931, "a chronic dust disease of the lung ... arising out of coal mine employment." 30 U.S.C. § 902(b). By contrast, the ALJ here specifically denied Vanover's claims regarding lung disease and only awarded compensation for Vanover's back injury. Pneumoconiosis leads to diminished cardiopulmonary capacity, and to other diseases of the lungs and heart. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976). Vanover's back condition has led to severe back pain and loss of function. Pneumoconiosis and a bad back are not the same injury or disability, and the Board did not err in failing to give Section 3(e) credit for Vanover's black lung benefits.
 
 III
 
 20
 Substantial evidence supports the ALJ's factual finding that Vanover's back injury was aggravated during his six months of employment with Foundation. Having established that Vanover's back injury was aggravated by his employment with Foundation, Foundation is liable to compensate Vanover under the well-settled last employer rule. Under the Act, the ALJ properly imposed interest on past-due compensation, and correctly refused to offset such compensation with Vanover's Black Lung Act benefits.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 There is also substantial doubt as to whether the Black Lung Act is a "workers' compensation law." Benefits under the Black Lung Act are not awarded based on lost wages. Beneficiaries receive a flat amount, 37.5% of the Civil Service grade GS-2 wage, regardless of what they earned before. 30 U.S.C. § 922(a)(1). Further, to qualify to receive benefits, one need only show that one cannot continue to work in a coal mine, not that one is disabled generally. See Usery v. Elkhorn Mining Co., 428 U.S. 1, 21, 96 S.Ct. 2882, 2895, 49 L.Ed.2d 752 (1976). Black Lung Act benefits seem more akin to veterans or social security benefits than to traditional worker's compensation benefits, and this court has held that federal disability benefits are not subject to Section 3(e) credit. Todd Shipyards v. Director, OWCP (Clark), 848 F.2d 125, 128 (9th Cir.1988)