JONES STEVEDORING CO., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Kenneth I. Taylor; U.S. Department of Labor, Respondents.

No. 96–70984.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 7, 1997.*

Decided Dec. 31, 1997.

* The panel unanimously finds this case suitable for decision without oral argument.   Fed. R.App. P. 34(a);  Ninth Cir. R. 34–4.

Robert H. Madden, Madden & Crockett, Seattle, WA, for petitioner.

J. Bradford Doyle, Corte Madera, CA, for respondent Kenneth I. Taylor.

Before: HARLINGTON WOOD, Jr.,** RYMER and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

We review a petition to set aside an award of compensation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 ("LHWCA"). Petitioner Jones Stevedoring Co., formerly known as Jones Washington Stevedoring Co. ("Jones"), disputes the Administrative Law Judge's ("ALJ") ruling for claimant and respondent Kenneth I. Taylor ("Taylor") for hearing loss sustained in his work for Jones on October 18, 1989.

Jones argues that Taylor's claim is time-barred by 33 U.S.C. §§ 912 and 913 for lack of timely notice and for failure to file a timely claim. Jones also contends that the ALJ's

** The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

finding that Taylor's employment at Jones caused his hearing loss is not supported by substantial evidence.

## I. BACKGROUND

Taylor has worked in the longshore industry since 1959 and has been a crane operator since 1966. On the night of October 14, 1989, he worked an evening shift for Eagle Marine Services ("EMS"), lasting from six to eight hours. At the end of the shift, on the morning of October 15, Taylor filled out an EMS accident report in which he reported ringing in his ears due to excessive noise from driving a semi the night before.

On the night of October 18, 1989, Taylor worked for Jones as a crane operator. He operated crane # 41 in tandem with two other cranes. Although Taylor did not later have a specific recollection of the noises he was exposed to that night, he testified that crane # 41 is one of the oldest and noisiest cranes at that waterfront site. He also testified that that night he worked outside the legs of the crane, a position that placed him close to the crane's motor and engine, thus exposing him to high levels of noise. In all, Taylor worked for Jones an hour-and-a-half that night, from 10 p.m. to approximately 11:30 p.m.

On October 19, 1989, Taylor went to a previously scheduled medical appointment with Dr. Gregory K. Chan, an otalaryngoloist who often examines patients suffering from occupational hearing loss. Taylor claimed he heard ringing in his ears ever since being exposed to loud noise at work on October 10, 1989. An audiologist in Dr. Chan's office administered an audiogram, and on October 24, 1989, Dr. Chan reported that Taylor had sustained a "bilateral, descending sensorineural hearing impairment from mild to moderate," and that under the American Medical Association standards for evaluating hearing loss, Taylor had a binaural hearing loss of 11.25 percent due to prolonged occupational noise exposure.

J. Bradford Doyle ("Doyle"), Taylor's attorney, received the audiogram on October 27, 1989. Taylor did not. On January 5, 1990, Doyle notified the District Director of the Office of Workers' Compensation Programs of a claim by Taylor for permanent hearing loss sustained in the course of his employment with EMS on October 15, 1989. On January 9, 1990, Jones received a copy of Doyle's January 5 letter, but the audiogram was not enclosed. The January 5 letter named Jones as the responsible employer for workers' compensation purposes because Jones was the last company to employ Jones prior to October 27, 1989.

On April 18, 1990, Taylor filed a claim against Jones for "bilateral hearing loss" sustained in the "course of employment" due to "exposure to high noise levels on job." October 27, 1989, was mentioned as the date of injury. On May 30, 1990, Doyle gave Jones a copy of the October 19, 1989, audiogram.

On March 22, 1991, Taylor filed an amended claim for hearing loss, this time naming Jones, EMS and Stevedoring Services of America as responsible parties, and again using October 27, 1989, as the date of injury.

On June 24, 1991, Dr. Richard L. Voorhees performed a second audiogram on Taylor and concluded that Taylor had sustained a binaural hearing impairment of 10.31 percent. Dr. Voorhees found that the slight discrepancy between his audiogram results and Dr. Chan's were within the normal margin of test error. On July 1, 1991, Doyle told Jones for the first time that Taylor's claim was for injuries sustained on October 18, 1989, while in the employment of Jones. On September 6, 1991, and May 13, 1993, two sound surveys were conducted in crane # 41 to measure the occupational noise levels.

On September 27, 1993, the ALJ ruled in favor of Taylor. The ALJ noted that Taylor's notice was not timely, but found that Jones had not been prejudiced by the lack of timely notice, and therefore excused the delay under 33 U.S.C. § 912(d)(2).

The ALJ also found that Taylor's claim was not timely because at no time prior to July 1, 1991, had Jones been notified that the claim concerned an injury on October 18, or indeed any injury that Jones had caused. Nonetheless, the ALJ, bound by the Benefit Review Board's ("BRB") decision in *Vaughn v. Ingalls Shipbuilding, Inc.*, 26 BRBS 27,

1992 WL 194730 (Ben.Rev.Bd.1992), found that the deadline for Taylor's claim had been tolled under 33 U.S.C. § 908(c)(13)(D). That provision tolls the time for filing either notice of injury or a claim for compensation for hearing loss until the employee receives an audiogram. In *Vaughn,* the BRB had taken this literally and held that an attorney's receipt of an audiogram was not enough. 1992 WL 194730 at *2. Because Taylor had *never* seen the audiogram—it had remained in his attorney's hands the entire time—the ALJ concluded that the limitations period had never begun to run. Thus, Taylor's claim was still timely. Finally, the ALJ found that Jones had in fact caused Taylor's injury on October 18, 1989.

Jones appealed to the BRB. Because the BRB failed to act within the time provided under the Omnibus Consolidated Rescission and Appropriations Act of 1996, Pub.L. No. 104–134, 1996 U.S.C.C.A.N. (110 Stat.) 1321, 1321–219, the ALJ's decision is deemed the final decision of the BRB for purposes of finality. *Id.* Thus, the ALJ's decision is the final agency decision. This petition for review followed.

## II. STANDARD OF REVIEW

■ In proceedings under the LHWCA, the BRB must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. *Port of Portland v. Director, OWCP,* 932 F.2d 836, 838 (9th Cir.1991). We ordinarily review the BRB's decisions for errors of law and adherence to the substantial evidence standard. *Id.* In this case, however, the BRB's "decision" was an artifact of Public Law No. 104–134, and it is inappropriate to give deference to an affirmance that did not result from adjudication. Accordingly, we proceed to review the ALJ's decision directly, and will reverse only for errors of law or failure to adhere to the substantial evidence standard.

## III. NOTICE

■ Timely notice and a timely claim are independent requirements under the LHWCA for a claim. *See* 33 U.S.C. § 912

(notice) and 33 U.S.C. § 913 (claim).[1] Therefore, they are addressed separately.

### A. The statutory deadline for notice

■ Section 912 sets out the requirements for timely notice to an employer of a workers' compensation claim. Generally, an employee has 30 days to provide notice, and the clock starts running when reasonable diligence would have disclosed the relationship between his injury and his employment. § 912(a). The notice period is extended to one year for diseases that do not immediately result in disability or death. In *Bath Iron Works v. Director, OWCP,* 506 U.S. 153, 161–63, 113 S.Ct. 692, 698, 121 L.Ed.2d 619 (1993), the Supreme Court held that occupational hearing loss is *not* a disease that does not immediately result in disability or death. Therefore, § 912(a) requires notice within 30 days.

■ Both parties agree that Taylor did not provide Jones with notice within 30 days of Taylor's awareness of his hearing loss. The dispute between the parties is whether *Bath Iron Works* governs the instant case. Taylor argues that prior to the date on which *Bath Iron Works* was decided, it was generally understood that occupational hearing loss was a disease that did not immediately result in injury or death; therefore, that § 912(a) was understood to dictate a one-year notice period. Indeed, Taylor's counsel's actions make sense only if he were under this impression. In *Bath Iron Works,* the Court noted a circuit split on how to characterize occupational hearing loss. 506 U.S. at 161–63, 113 S.Ct. at 698. Taylor thus argues that *Bath Iron Works* upset previously established law. He argues that the decision should not be applied retroactively to this case because the events of this case all took place before the Supreme Court's decision.

■ Taylor's argument, however, ignores the difference between a statutory amendment and an unexpected judicial decision. When Congress amends a statute, the law changes, and there is a presumption against the retroactive effect of such change.

---

**1.** All subsequent statutory citations are to Title 33, U.S.C.

*Hughes Aircraft Co v. United States ex rel. Schumer,* — U.S. —, —, 117 S.Ct. 1871, 1878, 138 L.Ed.2d 135 (1997). But when a court delivers a ruling, even if it is unforeseen, the law has not changed. Rather, the court is explaining what the law always was. *Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 752, 115 S.Ct. 1745, 1748, 131 L.Ed.2d 820 (1995); *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 90, 113 S.Ct. 2510, 2513, 125 L.Ed.2d 74 (1993) (holding that "this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision"). In *Rivers v. Roadway Express,* 511 U.S. 298, 313 n. 12, 114 S.Ct. 1510, 1519 n. 12, 128 L.Ed.2d 274 (1994), the Supreme Court elaborated:

> When Congress enacts a new statute, it has the power to decide when the statute will become effective. The new statute may govern from the date of enactment, from a specified future date, or even from an expressly announced earlier date. But when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.... Thus, it is not accurate to say that the Court's decision [in a case] "changed" the law that previously prevailed.... Rather, given the structure of our judicial system, [our] opinion finally decided what [the statute] had *always* meant and explained why the Courts of Appeals had misinterpreted the will of the enacting Congress.

Obviously, application of *Bath Iron Works* to this case could produce a very harsh result. Since Taylor's counsel justifiably relied on previously established law, as he understood it, in not providing notice within 30 days, he was completely blindsided by *Bath Iron Works.* This kind of unfairness to litigants, however, appears to be within the contemplation of the Supreme Court in *Rivers, Reynoldsville Casket,* and *Harper.*

Given *Bath Iron Works,* § 912(a) dictates a 30–day notice period in this case, and there is no dispute that Taylor failed to provide notice within 30 days of his injury. There is some ambiguity in the ALJ's opinion, however, about when exactly Taylor did provide

notice. Jones was first notified of Taylor's hearing loss on January 9, 1990, but it was not until July 1, 1991, that Taylor identified the correct date on which the injury occurred. We need not decide which date constituted official notice because either date is more than 30 days after Taylor's attorney received the audiogram confirming Taylor's hearing loss.

## B. Tolling

█ Taylor next argues that, notwithstanding his late notice, the deadline for giving notice was tolled because Taylor had not personally received a copy of his audiogram. Section 908(c)(13)(D) states:

> The time for filing a notice of injury, under section 912 of this title, or a claim for compensation, under section 913 of this title, shall not begin to run in connection with any claim for loss of hearing under this section, until the employee has received an audiogram, with the accompanying report thereon, which indicates that the employee has suffered a loss of hearing.

In *Vaughn v. Ingalls Shipbuilding, Inc.,* 1992 WL 194730, the BRB read this provision literally and held that receipt by a claimant's attorney of the audiogram does not constitute receipt by the employee. In this case, Taylor did not personally receive a copy of the audiogram until after the ALJ had rendered his decision, so if *Vaughn* is good law, then Taylor's notice and claim were both timely. However, the very fact that Taylor was able to proceed through much of this litigation without ever personally seeing his audiogram demonstrates why *Vaughn* was wrongly decided.

As an initial matter, *Vaughn* appears inconsistent with dicta in *Port of Portland.* In that case, we rejected a requirement that the same date must be used for determining both employer liability and the start-date for the statute of limitations. 932 F.2d at 841. We took it for granted—although the assumption was not necessary for the decision—that the statute of limitations started running on "the date [the employee's] attorney received the audiogram report." *Id.* Similarly, two decisions by the BRB, both prior to *Vaughn* and

unmentioned in it, assumed that receipt under § 908(c)(13)(D) began running when the employee's attorney received the audiogram. *See Ronne v. Jones Ore. Stevedoring Co.*, 22 BRBS 344, 1989 WL 245303, *5 (Ben.Rev.Bd. 1989); *Ronne v. Jones Ore. Stevedoring Co.*, 18 BRBS 165, 1985 WL 55341, *1 (Ben.Rev. Bd.1985).[2]

■ More generally, a bedrock principle of the American "system of representative litigation" is that "each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R.R.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quotation marks omitted); *see also Walker v. Sun Ship, Inc.*, 684 F.2d 266, 268–69 (3d Cir.1982) (applying *Link* to the Longshoremen's and Harbor Workers' Compensation Act); Fed. R.Civ.P. 5(a) (service upon a represented party "shall be made upon the attorney"); *cf. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993) (recognizing general rule that "clients must be held accountable for the acts and omissions of their attorneys").

In light of this general principle, *Vaughn*'s reliance on a literal reading of § 908(c)(13)(D) is somewhat strained, to say the least. Since clients are normally bound by the acts and omissions of their attorneys, Congress might simply have assumed that requiring receipt by the employee of the audiogram to trigger the statute of limitations encompassed receipt by the employee's attorney. The BRB thought that Congress had intended otherwise, and *Vaughn* purports to rely on the legislative history of § 908(c)(13)(D). In fact, the legislative history of that section is unenlightening. Congress explained that the purposes of requiring the employee to receive the audiogram are to give him time to file a claim and to allow him to undertake steps in his job to prevent further exposure to loud noise. H.R.Rep. No. 98–570, Part I, at 9–10 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2742–43. The Committee report indicates a desire that the audiogram report be "in a form

which is clearly understandable to the employee," that "technical and medical terms should be explained," and that "employees should be apprised of their rights to seek compensation." *Id.* While it is true that this language contemplates that the audiogram report must be written for the lay person, it is by no means certain what the reason behind this requirement is—it could be because only receipt by an employee personally would suffice, or, equally likely, because Congress thought that most workers would not have an attorney at this stage and might not decide to hire one until they were told in explicit terms that they have been injured on the job.

One thing that is clear is that starting the clock when the attorney receives the audiogram furthers the purpose of having a statute of limitations. As Taylor's counsel testified below, in most cases it is not necessary for the employee *ever* to see the audiogram report because his attorney can explain it to him. Indeed, in this case, Taylor never saw the report until *after* the ALJ had rendered a decision, and it seems odd to say that the statute of limitations for giving notice did not even begin until the litigation was almost over. Accordingly, we hold that an attorney's receipt of an audiogram is constructive receipt by the employee under § 908(c)(13)(D). Therefore, we reject Taylor's argument that the statute of limitations for giving notice and for filing a claim were tolled by that provision.

### C. Prejudice

■ Taylor's final, fallback position is to argue that even if his notice were late, and even if the deadline were not tolled, notice was nonetheless sufficient because Jones was not prejudiced by the late notice. Here we agree with Taylor. Failure to give timely notice does not bar a claim if the employer was not prejudiced by the delay, § 913(b)(2), and it is the employer's burden to establish prejudice. *Bivens v. Newport News Shipbuilding and Dry Dock Co.*, 23 BRBS 233, 1990 WL 284061, *5 (Ben.Rev.Bd.1990); 1A **Benedict on Admiralty** § 71b, at 4–20 (7th ed.1997) (citing cases).

---

**2.** Both appeals arose out of the same case.

■ "Prejudice" means merely that the employer's ability to investigate the case has been impaired due to the delay in giving notice. **Benedict**, *supra*, at 4–20 to –21. The ALJ concluded that Jones was not prejudiced by lateness of the notice because Jones still had ample time to obtain discovery and conduct sound surveys. Further, because the 1991 audiogram revealed that Taylor's hearing had not worsened since his first audiogram, Taylor's medical condition had not changed in a way that would prevent Jones from ascertaining the extent of Taylor's hearing loss.

Jones responds by arguing that the ALJ's finding of no prejudice conflicts with other findings by the ALJ. The ALJ rejected two proffered sound surveys of the workplace, concluding that "[t]here is no basis on which to find that either of the sound level studies reasonably reflect[s] the level of noise to which Claimant was subjected with his cab in the position it occupied on October 18, 1989. And, I consider such expert opinion testimony as there is on that question to be too speculative to be reliable." Jones claims this is inconsistent with the ALJ's finding that Jones, in spite of the delay, still had ample opportunity to obtain sound surveys. There is no inconsistency. The ALJ merely rejected the two surveys at issue in this case, there was no blanket ruling that sound surveys done months after the fact can never be reliable. Thus, it was not inconsistent for the ALJ to say that Jones had time to conduct sound surveys, and also to say that the surveys Jones proffered were unreliable.[3]

The ALJ correctly concluded that Jones had failed to meet its burden of demonstrating prejudice from Taylor's late notice. Therefore, the late notice is excused.

## IV. THE CLAIM

■ Independent of the requirement that a claimant provide timely notice to an employer is the requirement that the claimant file a timely claim. *See* § 913. Because

of *Bath Iron Works'* categorization of hearing loss claims, § 913 requires that such a claim be filed within one year after reasonable diligence would have revealed that the hearing loss was employment-related. § 913(a). Taylor makes, and we reject, the same retroactivity argument discussed above, arguing that *Bath Iron Works* disturbed previously settled law, under which hearing loss claims came under § 913(b)(2), which prescribes a two-year statute of limitations. Taylor also makes the same tolling argument under § 908(c)(13)(D) as he does for the late notice, again relying on *Vaughn*. As discussed above, we disagree with *Vaughn*. It follows that Taylor had one year from October 27, 1989—the date his attorney received the audiogram and accompanying report—to file a claim against Jones.

We conclude that Taylor met this deadline. On April 18, 1990—within the one-year period of limitations—Taylor filed a form entitled "Employee's Claim for Compensation" that named Jones as the employer, described Taylor's injury, but specified October 27, 1989, as the date of injury. For reasons that are not clear from the record, the ALJ referred to this form as a "notice of claim," not a claim itself. In its brief, however, Jones appears to concede that the April 18 form was in fact a claim. Jones defends only on the ground that the form listed the wrong date of injury (October 27 instead of October 18).

■ The ALJ's categorization of this filing as a notice of claim is clearly erroneous. The form is a standard form issued by the U.S. Department of Labor, and it says "Employee's Claim for Compensation" right on the top. The form also asks for the signature of the "claimant" and has a space for the employee to write in the "date of this claim." The submission of this form was the filing of a claim.

■ More difficult is Jones' argument that this claim is insufficient because it states the wrong date of injury, by nine days. Once

---

3. Jones also argues that it was inconsistent for the ALJ to state that Jones had ample time to conduct discovery when employers have no right to conduct discovery at the District Director stage. *See generally Percoats v. Marine Terminals Corp.,* 15 BRBS 151 (Ben Rev. Bd.1982). We fail to see the point in this argument. If Jones could not have obtained discovery even with timely notice, how could its discovery rights be prejudiced by late notice?

again, there is a retroactivity problem lurking underneath this case. Prior to May 10, 1991, it was generally understood that the responsible employer for workers' compensation purposes was the last employer the employee had worked for prior to receiving his audiogram. Thus, when Taylor's attorney received the audiogram on October 27, 1989, he would have thought that Jones, the last company to employ Taylor before that date, was the responsible employer *whether or not Taylor was injured while working for Jones*. Thus, the April 18, 1990, claim against Jones listing October 27, 1989, as the date of injury, could reasonably have been interpreted by Jones *not* as an allegation that Taylor had been injured on October 27, or even that Taylor had been injured while working for Jones. This claim told Jones only that Taylor had been injured and that he had received his audiogram on October 27.

On May 10, 1991, however, this court decided *Port of Portland,* and ruled that the responsible employer for workers' compensation purposes was *not* the last employer before the employee received the audiogram, but rather the last employer before the audiogram was administered. 932 F.2d at 840–41. Under this formulation, Jones was clearly the responsible employer because it had employed Taylor the day before the initial audiogram was taken. Furthermore, the legally relevant date of injury was now October 18, not October 27. On July 1, 1991, Taylor's counsel notified Jones for the first time that the claim concerned Taylor's employment on October 18. Thus, there is some merit to Jones' argument that the nine-day error on the April 18 claim was significant. The claim did not necessarily inform Jones that Taylor was seeking compensation for his October 18 injury.

Nonetheless, we conclude that Taylor's April 18 claim is sufficient. Neither the LHWCA nor the implementing regulations define the required contents of a claim, and "courts have liberally construed the [LHWCA] when determining whether a valid claim for compensation has in fact been filed." *Benedict, supra,* § 72a, at 4–28. Provided the claimant produces some kind of writing that mentions an injury and alleges

that the injury is employment-related, courts will usually accept this as a valid claim. *See id.* (citing cases).

The Supreme Court has stated, somewhat vaguely, that "[t]he claim, like the notice required by [§ 912] and like the pleadings required in any type of litigation, serves the purposes of notifying the adverse party of the allegations and of confining the issues to be tried and adjudicated." *U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP,* 455 U.S. 608, 613, 102 S.Ct. 1312, 1316–17, 71 L.Ed.2d 495 (1982). But the Court then noted, by way of caveat, that the workers' compensation system is a simplified version of traditional litigation, and it quoted from two treatises that emphasized the relaxed nature of the procedural requirements. *Id.* at 613–14 n. 7, 102 S.Ct. at 1317 n. 7. Under these liberal requirements, a technical error, such as listing a date of injury only nine days off from the actual date, seems not to be an appropriate basis for dismissing a claim. *Cf. Smith v. Aerojet–General Shipyards, Inc.,* 647 F.2d 518, 524 (5th Cir. Unit B 1981) (interpreting § 913 flexibly to hold that a "claimant should not be time-barred on a claim against an employer because the claimant failed to file against that employer before it could be held liable as a matter of law").

Further, the April 18 claim was not inconsistent with an assertion that Taylor had been injured on October 18 during his employment with Jones. October 27 was listed as the date of injury only because of prior judicial interpretations, and Jones should have understood it to mean that Taylor had received an audiogram on October 27 that indicated a hearing loss that had occurred earlier. Because Jones had been one of Taylor's employers shortly before October 27, Jones was in fact put on notice by the claim that Taylor might be seeking compensation for an injury sustained while working for Jones.

Finally, we consider the interaction of §§ 912 and 913. Section 912 requires notice within 30 days to the employer and § 913 requires the claim to be filed within one year. Both the notice and the claim serve a notice function of alerting the employer to an impending dispute, *U.S. Indus./Fed. Sheet Met-*

*al,* 455 U.S. at 613, 102 S.Ct. at 1316–17. Both also protect employers from fraudulent claims and encourage prompt investigation, *Port of Portland,* 932 F.2d at 841. Why, then, can late notice be excused if there is no prejudice to the employer, while a late claim cannot be similarly excused? The answer is that a statute of limitations serves a purpose of repose that notice does not: It settles financial disputes within a specified period of time. Once we see that repose is the only purpose served by the claims period that is not served by the notice period, it becomes clear why Taylor's April 18 claim is timely. If late notice is excused because there was no prejudice to Jones, then the purposes of the notice requirement have been satisfied. Therefore, the claim is not timely only if the independent purpose of the time limit on claims has not been satisfied. In other words, it makes no sense to say that late notice under § 912 is excused because Jones was not harmed by the late notice, but then to hold the claim time-barred because it was filed too late to give Jones adequate notice. If Jones had adequate notice, it had adequate notice. Again, § 913 does not say what has to be in a claim; it says only that the claim must be filed within one year. Taylor's April 18 claim was filed within one year of receipt of the audiogram, it named the correct respondent and it described the correct injury. Section 913's repose purpose was met by this claim. Therefore, Taylor's claim was timely.

## V. SUBSTANTIAL EVIDENCE

Lastly, we address Jones' argument that, all else aside, it was simply impossible that Jones exposed Taylor to injurious levels of noise on October 18, 1989.

▓▓▓▓ Under the last responsible employer rule, liability falls on the employer covering the risk at the time of the most recent injurious exposure related to the disability. *Port of Portland,* 932 F.2d at 842.[4] However, the rule "does not require a demonstrated medical causal relationship between claimant's exposure and his occu-

pational disease." *Id.* at 840. While we acknowledge the conflicting evidence in the record and the multiple employers that could have caused Taylor's hearing loss, we conclude that the ALJ's decision that Jones exposed Taylor to injurious levels of noise on October 18 was supported by substantial evidence.

The ALJ relied principally on Taylor's testimony, as he was entitled to. Taylor did not have a specific recollection of the noises he experienced while in Jones' employ, but testified from his general experience. Given expert testimony that cast doubt on the usefulness of the sound surveys conducted by Jones, it was within the ALJ's fact-finding prerogative to conclude that Taylor's testimony was the best evidence available about what happened on October 18, 1989.

Taylor described the many different kinds of noises he generally hears on the job, including the slapping of cables, the landing of lids, and the noise from the crane engines. He testified that the crane he used while working for Jones was old and much noisier than other cranes. He also testified that the cranes EMS had were much newer and quieter than Jones' crane. Further, Taylor testified that his hearing loss did not come from a non-work source. In all, this testimony was a reasonable basis for the ALJ to find that Taylor was exposed to harmful levels of noise during his employment at Jones on October 18, 1989.

Jones' criticisms of the ALJ's decision are unpersuasive. It is true, as Jones points out, that the ALJ relied heavily on Taylor's testimony, and that Taylor's memory was less than perfect. But the minor inconsistencies in Taylor's testimony does not mean that it was entitled to no credence and that the ALJ could not rely on it. As the fact finder, the ALJ was entitled to conclude that Taylor was a credible witness.

Jones emphasizes that Taylor said that crane # 41 had a "diesel" engine, and that Taylor believed diesel engines were louder

---

4. The "last employer rule" is a judicially-created doctrine under which full liability for an occupational disease resulting from the claimant's exposure to injurious stimuli during more than one

period of employment or insurance coverage is assigned to a single employer or insurer. *Port of Portland,* 932 F.2d at 840 n. 3.

than electric engines. Jones then asserts that crane # 41 was not diesel. Apparently, Jones wants the court to infer from Taylor's mistake that Taylor was lying or that he had no idea what he was talking about. The ALJ acted within his province in ignoring this strained argument. Although at some points in his testimony Taylor differentiated between diesel and electric engines, it is obvious from the transcript as a whole that this was merely a casual verbal habit. During one exchange, Jones' lawyer asked Taylor about crane # 41:

Q. And you're certain that crane No. 41 is a diesel crane?

A. No, I'm not.

Q. driven by diesel?

A. No, I'm not certain. I'm saying—well, it—no, I'm not certain it's diesel; *it's just noisy.*

Q. And in fact, since you're not certain it could well be an electric crane, couldn't it?

A. Yeah, sure, it could be.

Q. And if it's an electric crane, it doesn't have diesel noises, does it?

A. Well, they have diesel-electric. I'm not sure what that means. But no—yeah, okay. Yes.

(Emphasis added.)

This excerpt, when combined with the record as a whole, supports the conclusion that, while Taylor may have had a poor understanding of the difference between a diesel and an electric engine, he did understand the difference between a noisy and a quiet engine. It is the latter distinction that matters.[5]

Jones also disputes causation. Jones points out that in the 20 months following October 18, 1989, Taylor's hearing did not worsen, despite continued exposure to the noises typical in his kind of work. Jones thus argues that it is impossible that employment at Jones on October 18, 1989, exposed Taylor to noise that could have caused Taylor's hearing damage. The problem with this argument is that under the last responsible employer rule, liability falls on the employer covering the risk at the time of the most recent injurious exposure, even if there is not a demonstrated medical causal relationship between a claimant's exposure and his occupational disease. Taylor's testimony and the expert testimony regarding the sound surveys provide substantial evidence that the noise Taylor was exposed to on October 18, 1989, had the potential to damage Taylor's hearing.

Finally, Jones cites *Todd Pacific Shipyards Corp. v. Director, OWCP,* 914 F.2d 1317 (9th Cir.1990), in which we stated that "minimal exposure to offensive stimuli at a place of employment is not sufficient to place responsibility on a covered employer in the absence of proof that exposure in such quantities had the potential to cause his disease." *Id.* at 1320. Jones attempts to deflect blame onto EMS because Taylor worked for EMS on October 14 and 15 and reported ringing in his ears afterwards. Alas, this fact establishes only that employment at EMS possibly also set the stage for Jones' ultimate injury. It does *not* establish "the absence of proof" that exposure to noise while working for Jones had the potential to injure Taylor. Rather, Taylor's testimony, when combined with the expert testimony in this case, supports the ALJ's finding that Jones had exposed Taylor to significant injurious stimuli.

We have held that when two different employers may be responsible for an injury, the last employer that subjected the claimant to injurious stimuli is liable for the full award. *Id.* at 1319. As that last employer, Jones is liable.

**PETITION DENIED.**

---

5. Jones also objects to the ALJ's refusal to consider the sound surveys. However, as we have already noted, there was a substantial basis for this evidentiary ruling.